ARTHUR D. FURST, JR., Plaintiff, *v.* CAROLYN FURST, Defendant.

Supreme Court, Special Term, Erie County, April 22, 1948.

*Elmer R. Weil* for defendant.

*Barth, Abbate & Sullivan* for plaintiff.

*Bond, Schoeneck & King* for Alberta T. Furst.

WARD, J. This is a motion by the defendant for an order vacating and setting aside a judgment of divorce heretofore granted on the 26th day of March, 1946, in the Supreme Court of Erie County, which divorce became final as of course June 26, 1946, and for an order permitting the defendant to interpose an answer and defend the said action, or in the alternative, for an order modifying the said judgment by striking out that portion of the judgment awarding the custody of the children of the marriage of the parties to the plaintiff, and ordering that the custody of the children be granted to the defendant.

Voluminous affidavits in support of and in opposition to this motion are submitted. Upon the return day, the taking of oral testimony in addition to the affidavits, was ordered and notice of the proceedings was directed to be given to Alberta Treble Furst, the second wife of the plaintiff. Considerable oral proof was taken and extensive briefs have been filed by all interested parties.

It is claimed by the petitioner herein that she connived with and was in privity with the plaintiff in manufacturing the evidence upon which the judgment by default of March 26, 1946, was granted.

From the evidence it appears that the parties were first married June 23, 1934. This marriage was dissolved September 17, 1934, by the Hon. THOMAS H. NOONAN upon the grounds that the defendant herein was under the legal age of consent (Domestic Relations Law, § 7, subd. 1). Thereafter and on August 16, 1935, the parties hereto remarried and lived together as husband and wife until February 22, 1946. Two children were born of this union, Linda, age eleven years, and Jeffrey, age five years.

Petitioner claims that this was a most unhappy marriage. It will serve no useful purpose to set forth herein in detail her claims thereto. It is her claim that some time in the late part of 1945 and in the early part of 1946 several discussions were had between the parties with a view to dissolving the marriage. She claims that it was finally agreed that the divorce should be sought in New York State and that she should submit to defending so that her husband might carry out his plan of marrying Alberta Treble, his father's secretary.

The petitioner claims that as part of this agreement the decree was to direct custody of the children to her and that under no circumstances would she have agreed to the plan except for the plaintiff's promise thereto. The judgment of March 26, 1946, granted custody to the plaintiff. The defendant claims that she was not served with a copy of the decree and that she had no knowledge that custody had been granted to the plaintiff until early in the fall of 1947. When she discovered that she did not have the custody of the children, she brought this motion first returnable October 20, 1947.

It is the petitioner's claim that she is unskilled in matters of law and that her husband on the contrary is familiar with the laws and court procedure as he has been, for a number of years, a claims adjuster for an adjustment agency in the city of Buffalo.

Having consented to the general plan, petitioner claims she put herself entirely in the hands of her husband, the plaintiff, and was carefully schooled by him in the proof required under the laws of the State of New York. Together they set the stage. She claims that the scene upon which the plaintiff brought his witnesses was wholly manufactured by the parties and in nowise was there moral misconduct on her part and that no act of adultery took place. The record is full on the events leading up to this final scene and the conduct of the parties thereafter upon which I have based my findings and conclusions of law.

The plaintiff denies that he connived with the defendant or was in privity with her as to the alleged infidelity. It is his claim that he had been suspecting his wife of disloyalty for some time and had hired detectives to follow her and that the acts complained of in his complaint were without his consent, connivance, privity or procurement; that he has not forgiven or condoned the same nor has he voluntarily cohabited with the defendant since the discovery thereof within five years of the occurrence thereof, and that the defendant is an unfit person to enjoy the custody of the two children.

Two questions present themselves to this court: (1) Was the scene of February 21, 1946, the result of the consent, connivance and privity of the parties or were the acts of the defendant at that time, acts of infidelity occasioned without the consent, connivance, privity or procurement of the plaintiff? (2) If the former, what, if any, relief should this court of equity grant to the petitioner herein; if the latter, should the defendant have custody of her children?

A full consideration of all the evidence herein satisfies this court that the alleged acts of infidelity were in fact the product of the carefully laid plan of the parties; that the parties connived in manufacturing the evidence presented to the trial court and that in truth and fact, there existed no act or acts of infidelity on the part of the defendant. The second question remains.

The petitioner comes to equity seeking affirmative relief. She carries the sword. Ordinarily, her unclean hands would deny her affirmative relief. This is especially true when there are no others interested in the proceedings.

There are three groups of persons interested in this action: first, the People of the State of New York, second, the young children of this marriage, and third, the second wife of the plaintiff. The court must attempt to balance the equities affecting these interested persons unless it is to dismiss the petition on the sole ground that the petitioner cannot have affirmative relief because of her conduct in the matter.

The interest of the People of the State of New York is determined by the public policy of the State. The fundamental law best expresses the public policy of this State (N. Y. Const., art. I, § 9): " * * * nor shall any divorce be granted otherwise than by due judicial proceedings ". Decisions without number have uniformly held that the marriage status of the domiciliaries is of paramount importance to the welfare of the whole people of the State. By statute the Legislature has care-

fully prescribed the procedure required to dissolve a marriage upon the infidelity of a spouse. The whole procedure is based upon the assumption that one spouse has been unfaithful and that the act complained of was without the consent, connivance, privity or procurement of the other spouse. Section 1153 of the Civil Practice Act provides " In either of the following cases, the plaintiff is not entitled to a divorce, although the adultery is established: 1. Where the offense was committed by the procurement or with the connivance of the plaintiff."

Had the trial court the evidence before it that this court has on this motion and had it made a finding of connivance, it would have, of course, denied the divorce and dismissed the complaint. The trial court in this instance found itself in the same helpless position that all courts of equity find themselves in when listening to proof in default divorce proceedings. Upon the face the proof usually appears credible. The court has no way of contradicting or impeaching the testimony of the witnesses. The court may have a strong feeling that it is being used as the conduit to freedom by spouses no longer willing to fulfill their marriage vows and yet the court may not be able to deny the plaintiff the relief sought.

In the instant matter a fraud has been perpetrated upon the Supreme Court of this State. The court is the instrumentality of the People of the State of New York. It is the bulwark between lawlessness and licentiousness on one hand and security to society and orderly government on the other hand. It should not be complacent upon the discovery of fraud in its judgments. It should not permit a party to the fraud to retain the fruits of his fraudulent act upon his claim that his partner to the fraud has unclean hands. This is especially true when the interests of others than the immediate parties are involved and more especially when the fraud is worked directly upon the court itself. Such a fraud clearly differs from a fraud worked by one party upon the other in a matter preceding the litigation. Should the doer of the latter fraud seek affirmative relief as against the other party, the axiom of unclean hands would apply and the court would withhold affirmative relief.

In this case the parties have attempted to accomplish by private law what the public policy of the State forbids. There is a failure of " due judicial proceedings " required by section 9 of article I of the Constitution. This fraud of the parties has made a mockery of the statutes of the State, has flaunted the court and challenged the public policy of the State.

The interests of the second wife, Alberta Treble Furst, must be considered. There is no proof that she was in anywise involved in the conspiracy, although the record shows that she was acquainted with both parties for some time and had on frequent occasions been present in the home of the parties. From the record, she is entitled to be considered as an innocent party. As such, she has a right to rely on the validity of a decree granted by this court. The only question is whether her interest is paramount to the public interest. This raises a conflict in public interests, for it is to the public interest that the decrees and judgments of the courts of this State enjoy public confidence. Rights are fixed and determined by such judgments. However, if a court of equity is to be estopped from expunging from its records a judgment of divorce secured by fraud upon the court merely because one of the parties to the fraud remarries, it would place a premium on a speedy remarriage of the plaintiff so as to emasculate the court.

The interest of the children of this marriage is before the court. At the risk of appearing reactionary and old-fashioned, this court believes that the children of a marriage are entitled to the care, supervision and society of both parents. They become the innocent victims of the fraudulent conspiracy of their parents. They are entitled to a mother free of the stigma of adultery.

The public has a right to expect its courts to protect the public policy of the State and without hesitation to vacate and set aside judgments of divorce secured by fraud against the People and upon the court. Such action by the court would have a salutary effect upon those who might contemplate emulating the conduct of the parties herein, for the knowledge that there is no final security in a judgment obtained by fraud and conspiracy might restrain them from seeking to solve their marital problems thereby.

A court of equity has inherent power, aside from any statute, to set aside and vacate a judgment secured by fraud (*Furman* v. *Furman*, 153 N. Y. 309; *Clark* v. *Scovill*, 198 N. Y. 279, 286; *Ladd* v. *Stevenson*, 112 N. Y. 325; *Vanderbilt* v. *Schreyer*, 81 N. Y. 646).

This court is familiar with the case of *Gioia* v. *Gioia* decided by the Fourth Department of the Appellate Division in 245 Appellate Division 373. Therein the court found laches. There is no laches herein as the defendant moved promptly when she discovered that she had not been given custody of the children.

Moreover, laches should not run against the People of the State of New York when a fraud has been perpetrated upon the courts and against the People.

I, therefore, find that the parties hereto connived together to secure the judgment of divorce granted to the plaintiff March 26, 1946.

I find that the parties did not disclose their conduct to the attorneys for the plaintiff.

I conclude, therefore, from all the above that the public policy of the State of New York is paramount to the interest of Alberta Treble Furst.

I further conclude that because of the first finding of fact herein, no useful purpose would be served in permitting the defendant to file an answer and defend.

I further conclude that because of the fraudulent conduct of the defendant, she is not entitled to the alternative relief she seeks as to the custody of the children.

I, therefore, grant that portion of the petitioner's motion wherein she prays for an order vacating the judgment of divorce granted to the plaintiff and as against her, on the 26th day of March, 1946, and I deny her petition in all other respects and I dismiss the complaint herein.