In the Matter of JOHN T. MULLANE, Respondent, against JOHN MCKENZIE, as Commissioner of Docks of the City of New York, et al., Appellants.

(Argued November 20, 1935; decided January 7, 1936.)

*Paul Windels, Corporation Counsel (Arthur B. Hoff, Jr.,* and *Paxton Blair* of counsel), for appellants. The question of the applicability of section 23 of the Civil Service Law (Cons. Laws, ch. 7), as amended by chapter 734 of the Laws of 1935, is, as to the petitioner, *res adjudicata.* (*Luce* v. *N. Y., C. & St. L. R. R. Co.,* 213 App. Div. 374; 242 N. Y. 519; *Blair* v. *Bartlett,* 75 N. Y. 150; *Matter of Rheingold* v. *Delaney,* 245 App. Div. 706.) Section 23 of the Civil Service Law, as amended, should not be construed retroactively to upset rights vested by court order. If construed as retroactive the section would be unconstitutional. (*Feiber Realty Corp.* v. *Abel,* 265 N. Y. 94; *Matter of Barmonde* v. *Kaplan,* 266 N. Y. 214; *Matter of Deth* v. *Castimore,* 245 App. Div. 156; *Matter of Dieter* v. *Ryan,* 267 N. Y. 594; *Matter of Nagelberg* v. *Finegan,* 267 N. Y. 632; *Matter of Guarino* v. *Anderson,* 259 N. Y. 93; *Stemmler* v. *Mayor,* 179 N. Y. 473; *People ex rel. Waddy* v. *Partridge,* 172 N. Y. 305; *Matter of Mahon* v. *Board of Education,* 171 N. Y. 263; *Matter of Chapman* v. *City of New York,* 168 N. Y. 80; *Weston* v. *State,* 262 N. Y. 46; *People* v. *Westchester County Nat. Bank,* 231 N. Y. 465; *Rosalsky* v. *State,* 254 N. Y. 117; *People ex rel. Rice* v. *Graves,* 242 App. Div. 128.)

*John B. Doyle* for respondent. Under section 23 of the Civil Service Law, as amended by section 734 of the Laws of 1935, the respondent has a clear and conclusive statutory right to the relief granted, and the new law as applied in the order appealed from is constitutional. (*Matter of Deth* v. *Castimore,* 245 App. Div. 156; *Matter of Howard* v. *Higgins,* 245 App. Div. 154; *Matter of Rheingold* v. *Delaney,* 245 App. Div. 706; *Town of Guilford* v. *Board of Supervisors,* 13 N. Y. 143; *Matter of Borup,* 182 N. Y. 222; *People ex rel. Central Trust Co.* v. *Prendergast,* 202 N. Y. 188; *Munro* v. *State,* 223 N. Y. 208; *Babcock* v. *State,* 190 App. Div. 147; 231 N. Y. 560; *Williamsburg Sav. Bank* v. *State,* 243 N. Y. 231; *Farrington* v. *State,* 248 N. Y. 112; *Jackson* v. *State,* 261 N. Y. 134; *Matter*

of *Evans* v. *Berry,* 262 N. Y. 61; *Howard* v. *Daly,* 61 N. Y. 362; *Milage* v. *Woodward,* 186 N. Y. 252.) The previous orders appealed from, in effect refusing respondent back pay, and affirmed by the Appellate Division, are not *res adjudicata* against the respondent. (*Fox* v. *Employers Liability Assur. Corp.,* 239 App. Div. 671; *Marine Transit Corp.* v. *Switzerland General Ins. Co.,* 263 N. Y. 139.)

*Joseph T. Malone, amicus curiæ.* The Legislature has inherent power to pass remedial legislation, and where the intent and effect of the legislation is to right a wrong, to give relief where equity demands a remedy, or to satisfy the cry of conscience that legal sanction be given to a moral obligation, such legislation does not violate any provision of the Constitution, even though it be retroactive in effect, because it is the nature of remedial legislation to cure the past as well as to prevent the same wrong from happening again in the future. (*People ex rel. Central Trust Co.* v. *Prendergast,* 202 N. Y. 188; *Matter of Deth* v. *Castimore,* 245 App. Div. 156; *Farrington* v. *State,* 248 N. Y. 112.) The principle of *res adjudicata* cannot be applied where the demand is made under a statute expressly designed to give such relief, because the doctrine of *res adjudicata* not only demands that the subject-matter and the parties be the same or derive their authority from the same source, but that the prior judgment must have been one on the merits, and that the rights of the parties have not changed since the prior judgment. (*Rose* v. *Hawley,* 133 N. Y. 315; *Reynolds* v. *Ætna Life Ins. Co.,* 160 N. Y. 635; *Palmer* v. *Hussey,* 87 N. Y. 303; *Lindenthal* v. *Germania Life Ins. Co.,* 174 N. Y. 76; *Wrought Iron Bridge Co.* v. *Town of Attica,* 119 N. Y. 204; *Steel Co.* v. *Erskine,* 98 Fed. Rep. 215; *Pennsylvania* v. *Wheeling & B. Bridge Co.,* 18 How. 421; *Howell* v. *City of Buffalo,* 37 N. Y. 267; *City of Chelsea* v. *Dolan,* 24 Fed. Rep. [2d] 522; *State of Wisconsin* v. *Torinus,* 28 Minn. 175; *Mackenzie* v. *Douglas Co.,* 91 Ore. 375; *Matter of Pomeroy,* 51 Mont. 119; *Knights of Pythias* v.

*Meyer*, 265 U. S. 30; *Quanah, A. & P. Ry. Co.* v. *Panhandle & S. F. Ry. Co.*, 67 Fed. Rep. [2d] 826; *McGillis* v. *McGillis*, 154 N. Y. 532; *State ex rel. School Dist.* v. *Clausen*, 109 Wash. 37.)

*Albert De Roode* for William A. Carroll, *amicus curiæ.* The rule against double payment by the city is a rule of law creating nothing in the nature of a vested right on the part of the city to have it remain unaltered. (*Matter of Barmonde*, 266 N. Y. 214; *Martin* v. *City of New York*, 176 N. Y. 371; *Preston Co.* v. *Funkhouser*, 261 N. Y. 140; 290 U. S. 163; *Deuscher* v. *Cammerano*, 256 N. Y. 328; *Ward* v. *Iroquois Gas Corp.*, 258 N. Y. 124.) Chapter 734 of the Laws of 1935 does not offend the Constitution. (*Matter of Deth* v. *Castimore*, 281 N. Y. Supp. 114.)

LEHMAN, J. The petitioner was removed from his position as dockmaster on May 16, 1934, in violation of his rights under the Civil Service Law (Cons. Laws, ch. 7). He was reinstated by order of mandamus dated October 26th. During the interval the salary which should have gone to him was paid to another, who though younger in service was retained by the city in the position to which the petitioner was entitled. The order of reinstatement contained a direction for the payment by the city of the same salary to the petitioner. Before that direction was obeyed, this court in *Matter of Barmonde* v. *Kaplan* (266 N. Y. 214), pointed out that under long-established rules of law the city was under no obligation to pay the salary, attached to a position, to the person who was rightfully entitled to such position, where it had already paid the same salary to another, who actually, though without right, occupied the position and performed its duties. Then upon a motion made at Special Term to resettle the order for the petitioner's reinstatement, the provision for the payment of salary to the petitioner was stricken out.

Thereafter, by chapter 734 of the Laws of 1935, the Legislature amended section 23 of the Civil Service Law

to provide that " any officer or employee who shall have been, or may hereafter be removed " from his position in " violation of any provision of this chapter [the Civil Service Law]," and thereafter restored to his position by order of the Supreme Court, should be entitled to receive the same compensation from the date of his removal to the date of his restoration which he would have received in such position, but for such unlawful removal, less the amount of any compensation received from any other employment or occupation during that period. Thus by change in the law the Legislature has conferred upon officers and employees in the civil service a right to compensation which the law had theretofore denied to them.

The petitioner does not now challenge the order of resettlement which denied him the right which he at that time asserted. The law, as it then was, dictated such denial. Now he asserts a new statutory right. The earlier decision may be a conclusive adjudication of the petitioner's rights, existing then; it cannot be an adjudication of rights thereafter conferred by law, or bar a new proceeding to vindicate new rights.

It is clear that the Legislature intended to confer this new right retroactively upon those " who shall have been * * * removed," as well as prospectively upon those who " may hereafter be removed." Though, ordinarily, legislation creating new rights and obligations is intended to have only prospective application, yet within a limited field where no provision of the Constitution of the State or the United States restricts the powers of the Legislature, statutes which are clearly intended to have retroactive effect may be so applied. New rights may have their roots in old relationships. The question here is whether the Legislature in attempting to confer a new right upon officers and employees who had theretofore been removed in violation of the Civil Service Law, exceeded its powers as limited by the Constitution.

Until the statute was enacted, the city was under no obligation to pay to the petitioner the compensation it

has been directed to pay to him. Under the statute, compensation is to be paid as part of the emoluments of the petitioner's office, or for loss theretofore suffered by reason of a completed wrong. If it is regarded as extra compensation to a public officer or servant, section 28 of article III of the Constitution bars the Legislature from granting it. If it is regarded as a gift of public moneys, section 10 of article VIII is violated. We are told, however, that it is neither extra compensation nor gift, but an appropriation of public moneys to meet a moral obligation. That is the problem presented upon this appeal.

By constitutional mandate, the principle that appointments and promotions in the civil service of the State shall be based upon merit, and that the civil servants of the State shall have security of tenure, is firmly embodied in the public policy of the State. The Legislature rests under the duty of giving effect to this mandate by appropriate legislation. The removal of the petitioner violated provisions of the Civil Service Law and, even if made in good faith because of mistaken interpretation of complicated rules, it was a wrongful act, which deprived the petitioner of the benefits and emoluments of his office. The law provided a remedy by which the petitioner could be restored to his position; it did not permit recovery of the salary attached to the position where such salary had been paid to another. To that extent the Civil Service Law failed to confer upon officers and employees of the State or municipal corporations all the benefits of complete security of tenure. The common law had imposed no obligation to pay such salary upon the State or a municipal corporation, and the Legislature had not created such obligation. Under the recent amendment of the statute, the benefit of security of tenure in office or position is made more complete. Now it includes the right to demand and receive, as damages for a wrongful removal, the compensation which, but for such removal,

an employee would have earned and received. It cannot be doubted that the Legislature had power to provide that in the future such a right should be attached to tenure of office. There the Legislature's discretion in determining the rights and benefits which should attach to an office or position in the civil service and in determining how security of tenure shall be safeguarded is almost plenary. Then public moneys are used to meet the obligations to officers and employees in the civil service, which the Legislature could impose upon the State and municipal corporations. They are not used in any sense as a gift.

The situation is different when the Legislature provides that public moneys shall be used to pay to holders of office or positions, salaries or compensation for a period during which the State or municipal corporation was under no legal obligation to pay such salary. That is what the Legislature has attempted to do when it provided that persons " who shall have been   *   *   *   removed from any position   *   *   *   and who shall have been restored to such position or employment " may enforce payment of salary or compensation during the interval between removal and restoration. Such provision is on its face a gift of public moneys, unless there was a moral obligation to pay, even though no legal obligation may exist.

We assume that the Legislature has determined that such a moral obligation did exist here. " The decision by the Legislature that certain facts create a moral obligation, even if those facts exist, is not conclusive. The courts will still be called upon to decide whether its judgment was correct." (*Williamsburgh Sav. Bank* v. *State*, 243 N. Y. 231, 241.) It is said that the wrongful removal of a public servant unjustly prevents him from enjoying the emoluments of his position. " The injustice of depriving an employee of the emoluments of a position, to which he is legally entitled, and which have wrongfully been

withheld from him by the illegal and arbitrary act of his superior, is apparent at a glance." (*Matter of Deth* v. *Castimore*, 245 App. Div. 156, 163.) Such "injustice" may have been a cogent factor in inducing the Legislature to create an obligation to pay to them all emoluments withheld because of their wrongful removal. It cannot free the Legislature from the restrictions placed by the Constitution upon its powers when it attempts to use public moneys to remedy that "injustice," in cases where no legal obligation to pay existed at the time when payment was withheld.

The injustice must be real, and even then the remedy may not be through the grant of extra compensation to a public officer, servant, agent or contractor. "Such terms as 'moral obligation' and obligations 'founded on justice and equity' are flexible. They serve to formulate the problem rather than to provide the formula by which the problem may be solved. No yardstick has ever been devised which can be mechanically applied. None the less, in every case there must exist an obligation which would be recognized, at least, by men with a keen sense of honor and with real desire to act fairly and equitably without compulsion of law." (*Ausable Chasm Co.* v. *State*, 266 N. Y. 326, 330.) Because of the petitioner's removal, he lost the right to receive from the city the compensation which he might otherwise have earned. After payment in good faith to another, the city was no longer under any obligation to pay compensation to the petitioner. When the city then withheld such payment, it was acting in accordance with its legal rights, and it may be doubted whether that can be called "wrongful;" and whether the term "moral obligation," however flexible, could be stretched to cover such a situation, even if the Constitution had left the Legislature free to use the public moneys to meet a "moral obligation" of the State towards a public officer, servant, agent or contractor.

In that field the Constitution has imposed upon the Legislature a more inflexible restriction. A keen sense of honor and a real desire to deal fairly and equitably without compulsion of law might, at times, impel a private person to grant to a servant or contractor compensation beyond the amount which by agreement he was bound to pay. The Constitution of the State forbids the Legislature from granting any extra compensation (Art. III, § 28). There the mandate is absolute, regardless of conditions or circumstances. It is said that in this case the Legislature did not grant extra compensation to a public servant, but merely provided that he should receive the compensation previously fixed by law, to which he would have been entitled except for his wrongful removal, and in effect imposes damages for a wrong committed by the State or a municipality. Such distinctions would defeat the plain intent of the constitutional restriction. That is imposed for the protection of the public against misapplication of the public moneys. The Legislature may not use these moneys for the payment of compensation to a public servant where the servant is not entitled by law to such compensation. A payment of compensation to a public servant constitutes extra compensation whenever there is no legal obligation to pay such compensation. The Legislature has attempted to impose upon the city an obligation to pay its servant compensation during a period when such servant has been ousted from his office and has performed no services for which the city was liable. A statute requiring a city " to pay its public money for a service never rendered and for which it was not liable, falls within the inhibition of the provisions of the Constitution." (*Stemmler* v. *Mayor*, 179 N. Y. 473, 483.)

The order of the Appellate Division should be reversed and that of the Special Term affirmed, without costs.

FINCH, J. (dissenting). I am unable to concur for it seems to me that there is not only a moral obligation to pay the incumbent who has been wrongfully removed, but the situation is such that if private individuals were involved, there would also be a legal obligation by way of damages for the breach. (*Howard* v. *Daly*, 61 N. Y. 362, 371; *Milage* v. *Woodward*, 186 N. Y. 252, 257.) Such legal obligation would be implicit in the finding of the court that the incumbent has been ousted contrary to law. The State or subdivision thereof would be liable had not the court absolved the public authorities from liability to pay over again to the wrongfully ousted claimant. (*Matter of Barmonde* v. *Kaplan*, 266 N. Y. 214.) The Legislature to its credit has now held the public authorities to as high a standard of morality and justice as demanded of the private individual. This is as it should be. The expressed intention and purpose of the Legislature being to give the statute a retroactive application (*Jacobus* v. *Colgate*, 217 N. Y. 235, 240; *Hallenbach* v. *Born*, 238 N. Y. 34, 38), and a claim existing founded in equity and justice (*Town of Guilford* v. *Board of Supervisors*, 13 N. Y. 143, 149), the statute is constitutional. Contrary statements to be found in *Stemmler* v. *Mayor* (179 N. Y. 473) are dicta.

The respondent was wrongfully removed, rightfully reinstated, has not been reimbursed, and had no opportunity to receive any other compensation during the period he was out of office.

I vote to affirm.

CRANE, Ch. J., HUBBS, CROUCH and LOUGHRAN, JJ., concur with LEHMAN, J.; FINCH, J., dissents in opinion, in which O'BRIEN, J., concurs.

Ordered accordingly.