194 So.2d 605 (1967)
Vincent BONVENTO and John Bonvento, Appellants,
v.
The BOARD OF PUBLIC INSTRUCTION OF PALM BEACH COUNTY, Florida a Florida Public School Corporation, Appellee.
No. 35038.
Supreme Court of Florida.
January 25, 1967.
Miller, Cone, Owen, Wagner & Nugent and Larry Klein, West Palm Beach, for appellants.
Paty, Downey, Lewis & Daves, West Palm Beach, for appellee.
THOMAS, Justice.
This controversy comes to us under the provisions of Sec. 4 of Article V of the Constitution, F.S.A. providing that "appeals from trial courts may be taken directly to the supreme court, as a matter of right, * * * from final judgments or decrees directly passing upon the validity of a state statute * * *."
The statute held by the Circuit Judge to be unconstitutional is Chapter 65-894, Acts of 1965, which follows:
"Section 2. The sum of fifty thousand dollars ($50,000.00) is hereby appropriated out of the funds in Palm Beach county board of public instruction to be paid to Vincent Bonvento, a minor, as compensation for his fractured spine and permanent paralysis to be held in trust for him by his father, John Bonvento; and of which sum the father, John Bonvento, is entitled to reimbursement for actual expenses incurred for medical and related services."
The Circuit Judge concluded that the law conflicted with Sec. 13, Article XII of the Constitution, proscribing the enactment of any law "authorizing the diversion or the lending of any County or District School Funds, or the appropriation of any part of *606 the permanent or available school Fund to any other than school purposes * * *." He thought the legislature in a magnanimous desire to assist the unfortunate youth, whose plight we will presently describe, overlooked the restriction imposed by this Constitutional inhibition. So he declared the Act invalid since, he commented, the Supreme Court had declared that payment of school funds to an injured student was not use of the money for "school purposes." For support of the view he referred to Bragg v. Board of Public Instruction of Duval County, 160 Fla. 590, 36 So.2d 222, and Richter v. Board of Public Instruction of Dade County, Fla., 91 So.2d 794.
Before going into the question of the applicability of the cited cases to the controversy with which we are dealing we will briefly give the salient facts. The appellant, Vincent Bonvento, suffered serious injuries to his back when a "human pyramid" of which he was a part and which was formed under the supervision of a teacher in a class in physical education collapsed. His spine was fractured and his lower extremities were completely paralyzed. The treating physicians fix the extent of his injuries at 65 per cent. to 75 per cent. of his body. All these facts were declared by the legislature to be true in the preamble to the Act and, further, that the medical treatment to date had reached the sum of $25 thousand.
We think the validity of the Act does not require the narrow and strict interpretation attributed to it by the veteran Circuit Judge, much as we respect his judicial wisdom. First, we have held that acts of the legislature carry such a strong presumption of validity that they should be held constitutional if there is any reasonable theory to that end. Knight & Wall Company v. Bryant, Fla., 178 So.2d 5. Moreover, unconstitutionality must appear beyond all reasonable doubt before an Act is condemned. Campbell v. Johnson, Fla., 182 So.2d 244. In their argument the appellants pose the rhetorical question whether or not there could be any doubt that had a piece of furniture or equipment been damaged when the pyramid collapsed the repair of it could be made from school funds. We conclude that the answer would obviously be in the affirmative. And we add our own question, if school funds may be used to repair a broken piece of furniture or equipment, why not a broken human body?
The two cases cited in the judgment are not, in our opinion, as restrictive as the judgment indicates. In Bragg the question was whether or not a Board of Public Instruction was immune from liability in a tort action, and the court significantly stated, "The law may impose liability for tort on Boards of Public Instruction but the prevailing rule in this country is that they are not so liable unless made so by law." [Italics supplied.] In the same opinion there is reference to Sec. 234.03, Florida Statutes 1941, which the court thought was a recognition of immunity by the legislature, hence the need of the law protecting school children in transit.
In Richter this court, referring to Bragg, commented that it followed the universal rule where no provision had been made "by statute for such suits." It is true that the court cast doubt on the power of the legislature to authorize "such suits" (in tort). But we are immediately concerned with construction of the two words in the Constitution: "school purposes" and although there is similarity in the two cases cited and this one, the point of law involved is not identical.
There are provisions in the statutes for insuring athletes (Sec. 232.43) and requiring county boards to secure and keep in force insurance "covering liability for damages on account of bodily injury, or death * * * to pupils legally enrolled in the public-schools" while they are being transported to and from a school or a school activity (Sec. 234.03). These statutes are not directly involved but they certainly reflect the attitude that students in schools shall be safeguarded.
*607 We resolve the main problem by holding that the Act of the legislature has not been shown beyond a reasonable doubt to be invalid and should not be held unconstitutional on the ground that no reasonable theory supports its validity.
Although the Circuit Judge disregarded appellee's point Number II challenging the sufficiency of the notice of intention to apply for special legislation as required by Sec. 21 of Article III of the Constitution, we will notice it but only to remark that an examination of the notice convinces us it conforms to our many expressions on the subject.
Two other questions appear here both of which the Circuit Judge did not mention in his judgment, a position well taken as they are obviously without merit.
The judgment of the Circuit Court is reversed.
THORNAL, C.J., and ROBERTS and ERVIN, JJ., concur.
DREW, J., dissents with Opinion.
O'CONNELL and CALDWELL, JJ., dissent and agree with DREW, J.
DREW, Justice (dissenting):
This suit for declaratory decree filed by the Board of Public Instruction of Palm Beach County resulted in the final decree now before us for review. Pertinent portions of the decree are:
"It is the view of the Court that the Legislature, in a magnanimous and liberal desire to assist this unfortunate youth, has overlooked the restrictions placed upon the use of school funds by Section 13, Article XII, Constitution of Florida, reading:
"`No law shall be enacted authorizing the diversion or the lending of any County or District School Funds, or the appropriation of any part of the permanent or available school Fund to any other than school purposes.'
"The Supreme Court of Florida has decided that payment of school funds to an injured student is not a school purpose as thus defined by the Constitution. See Bragg v. Board ([160 Fla. 590] 1948), 36 So.2d 222; Richter v. Board, (Fla. 1957), 91 So.2d 794.
"It follows that the Act in question is invalid. Thereupon,
"It is ORDERED and DECREED that Chapter 65-894, Laws of Florida, is unconstitutional, and the plaintiff is enjoined and restrained from disbursing the school funds as directed in said Act. Each party shall pay his own court costs."
The decree appealed from should, in my opinion, be affirmed, not only for the reasons stated in the decree but because the Legislature does not have the power to disburse or authorize the disbursement of public funds except for public purposes. What constitutes a public purpose is largely a matter for legislative determination, but the question is ultimately a judicial one.[1] What the Legislature has done here is to make a gift of public funds to an individual  an act clearly beyond its power.
Bragg v. Board of Public Instruction of Duval County, supra, was a suit against the Board of Public Instruction of Duval County by a student for injuries received while manipulating an old model printing press used by the Duval school system in its manual training program. In upholding a dismissal of the action in the trial court, this Court held that, while the law may impose liability for torts on Boards of Public Instruction in this State,[2] the prevailing rule *608 in the country was that there is no such liability in the absence of such a law. The court further stated that the fact the Board of Public Instruction was created as a body corporate with power to sue and be sued does not affect its immunity from tort. In discussing the question of immunity, the Court then referred to Section 13, Article XII of the Constitution quoted above and relied upon by the lower court and stated "the principle of immunity from tort has been approved by indirection in Sections 9 and 13, Article 12 of the Constitution, wherein the public school fund is detailed and immunized from use for any other purpose." The facts in the Bragg case and this case are basically identical. In both cases a student was injured in activities conducted in public schools. In Bragg, this Court squarely held that the public school funds were immunized from use for any other purpose. The compensation of Bragg for injuries was what the Court had reference to when it referred to "any other purpose." This decision clearly held that school funds could not be used for the purpose of paying for injuries received by the student Bragg. The other case cited by the trial court concerned the question of whether the Board of Public Instruction of Dade County was liable for damages for the alleged tortious death of a student enrolled in the public schools of Dade County. There it was held that such question was considered and answered in the negative in the Bragg case. "This case [the Bragg case] approves the rule followed in every state throughout the country where provision has not been made by statute or otherwise for such suits. In view of Sections 9 and 13, Article XII of the Constitution, it is questionable whether or not such provision could be made without amending the Constitution." In both the Bragg and the Richter cases the Court was concerned with an action brought by a student to recover for injuries. Here we are concerned with an act of the Legislature directing the payment of a large sum of money out of the county school funds mentioned in the Constitution for the payment of damages to a student. I can see no difference whatever in the principles involved. I think the trial court was eminently correct in holding that the Constitution itself prohibited the diversion of any of the monies protected under Section 13 of Article XII to other than school purposes without getting into the other serious constitutional questions which are inherently involved in this litigation.
The legislative journals show that the bill, while advertised as a local bill, was treated and passed as a claims bill as required by Section 11, Article XVI of the Constitution. This section of the Constitution reads as follows:
"Extra compensation claims. No extra compensation shall be made to any officer, agent, employe, or contractor after the service shall have been rendered, or the contract made; nor shall any money be appropriated or paid on any claim, the subject matter of which shall not have been provided for by pre-existing laws, unless such compensation or claim be allowed by bill passed by two thirds of the members elected to each house of the Legislature."
This Section, construed with Section 22 of Article III, which reads as follows:
"Suits against state.  Provision may be made by general law for bringing suit against the State as to all liabilities now existing or hereafter originating."
in my opinion limits claims to those arising ex contractu. Recognizing the immunity of the State from liability in tort actions and recognizing that such immunity may be waived under Section 22 of Article III only by general law which would operate uniformly throughout the State, I do not understand upon what theory the Legislature may single out individuals as beneficiaries of gifts or for compensation by the State. If the State had waived its immunity by general law as provided by Section 22 of the Constitution, recovery in a tort action would be dependent upon establishing *609 legal liability and proving damages. This was not done nor was any attempt made to do so in the instance now before us.
There are hundreds of thousands of students enrolled in the public schools of this State and additional thousands in the junior colleges and universities. There must be literally hundreds of cases each week where students are injured in the many activities being carried on in our school system. Elemental considerations of equal protection and fairness, it seems to me, requires that all be treated alike, a goal impossible to attain if we recognize the power of the Legislature in its sole discretion to contribute public monies of the State or its several subdivisions  including school boards  to such individuals as it determines for such injuries as it may decide, whether arising through the fault of the State or not. Established principles of equal protection of the laws, it seems to me, would be violated by such a concept.
What actually occurs under such a situation is clearly revealed by an examination of the 1965 general acts. In the instance before us, this young man was given $50,000. The same Legislature enacted Chapter 65-714, which awarded $1500 to the mother of a fourth grade student who, as a result of a beating by fellow students while a teacher was absent during school hours, suffered permanent brain damage resulting, according to the Legislature, in the probability that said child would never lead a normal life.
Acts of the Legislature reveal that hundreds of claim bills are introduced and many enacted in each session of the Legislature and not all deal with claims arising ex contractu; many deal, as does this claim, with the award of compensation for injuries arising out of acts of the State or its subdivisions. Strangely, none of these bills seem to have been the subject of litigation. At least I find no case dealing with the power of the Legislature to compensate persons for injuries for causes of action under which the State is protected by its immunity from suit and none have been cited to us by able counsel in this case.
This Court has consistently held that our Constitution prevents the State from lending its credit to private individuals and has for instance time after time refused to validate bonds which were sought to be issued for this purpose. Only recently this Court declared unconstitutional an act of the Legislature in the 1965 session contributing $50,000 to the Junior Chamber of Commerce to build its international headquarters in this State. If this latter act was unconstitutional, it is extremely difficult for me to understand on what rational basis this Court can approve an act contributing $50,000 of public funds to an individual for injuries received in a situation in which there has not been shown any wrongful conduct on the part of the State, and, in addition thereto require that payment be made out of trust funds which the organic law says can be used only for school purposes.
There is yet another serious constitutional defect in this act.
In February of 1965 there was published in a local newspaper in West Palm Beach, pursuant to the requirements of Section 21, Article III of the Florida Constitution and Section 11.02, Florida Statutes 1963, F.S.A., a notice of intention to apply to the Legislature for the passage of certain local legislation. This notice reads as follows:
"NO. 2050
"NOTICE OF LEGISLATION
"TO WHOM IT MAY CONCERN:
Notice is hereby given of intention to apply to the 1965 session of the Florida Legislature for passage of an act for the relief of John Bonvento as father of Vincent Bonvento, a minor; authorizing the Board of Public Instruction of Palm Beach County, to investigate the claim of *610 said John Bonvento and pay him an amount not exceeding Fifty Thousand Dollars ($50,000.00) as and for damages resulting from injuries to the said Vincent Bonvento, sustained on March 15, 1962, while he was in attendance as a pupil in the public schools of Palm Beach County, Florida; providing authorization for the Board of Public Instruction of Palm Beach County, Florida, to budget sufficient funds to comply with the provisions of this law and to do and perform any and all acts necessary to appropriate a sum not exceeding Fifty Thousand Dollars ($50,000.00) to be paid to said John Bonvento for the relief claimed by him; providing an effective date.
"OR IN THE ALTERNATIVE
"An act for the relief of Vincent Bonvento, age fifteen (15), a minor; authorizing the Board of Public Instruction of Palm Beach County, Florida, to waive its governmental immunity from liability and the damages resulting from injuries to the said Vincent Bonvento, sustained on March 15, 1962, while he was in attendance as a pupil in the public schools of Palm Beach County, Florida.
"Pub.:
February 19, 1965."
When the bill was introduced in the House by the Palm Beach County delegation, it was immediately referred to the committee on claims. The bill as introduced, however, was not one complying in any respect with the notice but was one authorizing the payment of $50,000 out of the general revenue fund of the State of Florida from funds not otherwise appropriated. The following is an excerpt from the House Journal of May 13, 1965:
"On motion by Mr. Roberts of Palm Beach, the rules were waived by two-thirds vote and HB 961 was read the second time by title.
"The Committee on Claims offered the following amendment which was adopted on motion by Mr. Roberts of Palm Beach:
"In Section 2, page 2, line 3, strike: `the general revenue fund of the state of Florida, from funds not otherwise appropriated' and insert the following: `Palm Beach county board of public instruction'
"The Committee on Claims offered the following amendment which was adopted on motion by Mr. Roberts of Palm Beach:
"In Section 3, on page 2, strike entire Section 3 and insert the following: `Section 3. The board of public instruction of Palm Beach county is required and directed to draw a warrant for said sum of fifty thousand dollars ($50,000.00) from the general county school fund of the county in favor of John Bonvento as natural guardian of Vincent Bonvento, a minor, upon this act becoming law.'
"On motion by Mr. Roberts of Palm Beach, the rules were waived by two-thirds vote and HB 961, as amended, was read the third time in full and passed, as amended, by the required constitutional two-thirds vote of all Members elected to the House. * * *"
It is obvious from the Journal that when the bill was thus amended providing for payment out of the school funds of Palm Beach County, it was treated by the Legislature purely as a local bill and enacted in the House and later in the Senate without a dissenting vote. Those familiar with the proceedings of the Legislature know that when such acts are local in nature, the House acts upon them as a general rule unanimously and with a waiver of all formalities.
The Constitution[3] contains a provision the purpose of which is to advise the people who have to pay the bill or are affected *611 by the legislation of the intention of the local delegation or others to apply for particular legislation.[4] The purpose of this section of the Constitution, as this Court has repeatedly held, is to place the people to be affected by the act on notice of what the act is to contain and the purpose of it. In this instance even a casual reading of the enacted bill shows that it is wholly different from either act advertised. Not only is it completely different but it is basically contrary to the proposed legislation set forth in the notice. The first part of the notice to apply advises the public in Palm Beach County that the legislature will be asked to pass an act authorizing the local school board to investigate the claim of Bonvento and pay him an amount not exceeding $50,000.00 damages and authorizing the board to budget funds for such purpose. Assuming such an act could be lawfully enacted, it was purely one authorizing but not compelling action by the local board, whereas the bill, as enacted, was one removing any discretion from the local board and appropriating public trust funds derived from the taxpayers of the County for the payment to Bonvento. The alternative was one advising the public of the intention to apply for an act authorizing the Board of Public Instruction of the County to waive immunity. Such an act would obviously be contrary to the provisions of Section 22, Article III of the Constitution, supra, and no attempt was made to either introduce or enact such legislation.
And so it is that this act being local in its nature has never been advertised as required by law.
I pose these questions. If we uphold this legislation, what is the limit upon the powers of the Legislature in the appropriation of public funds? What becomes of the checks and balances in government we so often speak of and, finally, by what constitutional standards can such legislation ever be judged?
I would affirm the questioned decree.
O'CONNELL and CALDWELL, JJ., concur.
NOTES
[1] 42 Am.Jur. page 764 Para. 62 citing Mullane v. McKenzie, 269 N.Y. 369, 199 N.E. 624, 103 A.L.R. 758; 270 N.Y. 563, 200 N.E. 319.
[2] Sec. 22, Art. III, Florida Constitution. Cited infra.
[3] Section 21, Article III.
[4] State ex rel. Watson v. Crooks, 153 Fla. 694, 15 So.2d 675. State ex rel. Watson v. City of Miami, 153 Fla. 653, 15 So.2d 481.