Nathan R. Sobel, J.
These are cross motions for summary judgment (CPLR 3212) in an action for a declaratory judgment which attacks as unconstitutional section D17-25.0 of the Administrative Code of the City of New York. Issues of law only are presented.
The section in issue was added to title D of chapter 17 of the code in 1956 (L. 1956, ch. 481, eff. April 9, 1956). Title D, the in rem foreclosure statute, was added to the code in 1948 (L. 1948, ch. 411). The latter provided an alternative method for collecting city taxes on real propery — alternative to foreclosure of tax liens (see Real Property Tax Law, § 1110 et seq.) and the sale of tax liens (see Administrative Code, § 415[1]-23.0 et seq.) by an in rem foreclosure action.
The in rem procedure is “ quick ” and “ cheap ” but it is also summary in that owners and lienors are not necessary parties and are not personally served in the action. The action is directed against the property in rem. Due process is observed by mailing notice of the action to the registered owners of the property and by publication (cf. Nelson v. City of New York, 352 U. S. 103).
In rem tax foreclosure proceedings have been held constitutional in this and other States, the theory being that there exists an affirmative duty on owners (and lienors) to pay their property taxes and that failure to do so for an extended period (four years under the in rem foreclosure statute) is rarely inadvertent. A minimum of “ notice ” therefore suffices. And, when an owner is “ unable ” to pay, he may preserve his equity in the property by requesting a tax sale and the establishment of a surplus (City of New York v. Chapman Docks Co., 1 A D 2d 895).
No issue is raised in this action as to the in rem foreclosure statute per se. The attack on constitutional grounds is directed *386 rather to the provision (§ D17-25.0) added, to that statute for the purpose of preventing even occasional injustice. The statute has a “ history.”
The Justices of the Supreme Court were requested to make recommendations to the Temporary Commission on the Courts (Tweed Commission) for needed “ reforms.” Among several dozen was one which suggested: “ Foreclosure in rem by the City of New York. The provisions of the Administrative Code with respect to the right of the owner to redeem should be liberalized in order to prevent injustices which frequently result from the ignorance of the owner of the pendency of the foreclosure proceeding.” Evidently the recommendation was based on some “ experience.” But the Corporation Counsel replied that11 less than one-one thousandth of the property owners affected by foreclosure by action in rem felt sufficiently aggrieved to bring proceedings in the courts to effect redemption.”
Ultimately, however, the city yielded and section D17-25.0 was added to the code by the Legislature on recommendation of the city authorities.
That code section is much too long to be set forth in any detail — instead the relevant provisions under attack are discussed:
(1) The statute is not a “ redemption ” statute as that term is used in foreclosure proceedings — redemption in the course of the proceedings or during a stated period thereafter before title vests. It is instead a “ reconveyance ” statute — necessarily so because in the in rem foreclosure proceedings the city receives in the judgment “an estate in fee simple absolute in such land and all persons, including the state of New York, infants, incompetents, absentees and non-residents who may have had any right, title, interest, claim, lien or equity of redemption in or upon such lands shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption” (§ D17-12.0, subd. d). Having wiped out all rights, the new statute could only provide for a reconveyance (not redemption) to persons unfairly deprived of their property.
(2) The statute provided that the Board of Estimate could, in its discretion, reconvey to two classes of persons— (1) former “owners,” and (2) former “lienors”, which would include mortgagors and persons purchasing transfer of tax liens (under the old procedure).
The basic claim of unconstitutionality arises because of the conflict between these two groups.
*387 Both groups are divested of any claim against the land by the in rem foreclosure. The new statute provided, however, that the owner should receive a preference in the right to petition for reconveyance. If he fails to do so within two months (short Statute of Limitations, discussed infra), then the board could consider a pending application from a lienor.
Both owners and lienors are required to pay all “back” taxes owed to the city and certain costs, etc. But instead ol receiving on the reconveyance the “ estate in fee simple absolute ” acquired by the city, the title conveyed back is “ the title which was vested in the owner [before the foreclosure] subject to any and all liens, encumbrances and defects which existed on said date ”.
This provision, it should be observed, is just and fair as regards a reconveyance to an owner. He should not, by merely paying “back” taxes, obtain a title free and clear of the mortgage or a transfer tax lien. (The latter under the old procedure is bought from the city for the price of the city’s tax lien; since the city has already been paid, such a lien is not included in the “ back ” taxes which the petitioner for reconveyance must pay.) The statute provides that upon reconveyance to an owner, the mortgage and the transfer tax lien are reinstated. Thus, when an owner petitions, his petition directly “ benefits ” the mortgagor and the transfer tax lienor who had been wiped out by the in rem foreclosure.
But this is not so when a lienor petitions. A reconveyance to him does not “restore” the owner-, the owner remains “ wiped out.” Assume a parcel worth $100,000 with a $30,000 mortgage and a $3,000 transfer tax lien. An owner receiving a reconveyance takes subject to $33,000 in liens. A mortgagor or a transfer tax lienor takes the owner’s title subject to $33,000 in liens — hut the $67,000 “ equity ” of the owner is wiped out. It is idle for the city to contend that my hypothetic situation simply never occurs. The point is that a statute permits it to occur and such a statute is grossly unfair even if not fundamentally, i.e., unconstitutionally, unfair.
* * *
I turn to the factual situation in the instant case. Several parcels (8) owned by several owners were involved. There were no mortgages but on each of the parcels one Sam Mintz had acquired a transfer tax lien. An in rem judgment entered April 25, 1965, wiped out the owners as well as Mr. Mintz.
Approximately one year later (April 9,1956) section D17-25.0 of the code was enacted. Under its provisions, the owners *388 as well as Mr. Mintz were allowed two months within which to apply for a reconveyance. Mr. Mintz applied &emdash; the owners did not. On July 3, 1958, Mr. Mintz received from the city a deed conveying to him the “ owner’s title” to the eight parcels in issue, having paid all ‘ ‘ back ’ ’ taxes amounting to some $29,000. The owners who were wiped out by the in rem foreclosure judgment of April 25, 1955 were not “ restored ” (as Mr. Mintz would have been if the owners had received the reconveyance).
Mr. Mintz conveyed the property to the principal defendant Astoria Holding Corporation, which in turn obtained a mortgage from defendant Chase Manhattan Bank.
Plaintiff Old Dutch purchased during 1963, 1964 and 1965 from some of the “ owners ” what amounts to a “ chose of action” (see § D17-25.0, subd. d). Some of the other defendants who have appeared are either the old owners or their representatives or successors in interest by inheritance or devise. Others of the defendants are purchasers or representatives or successors in interest to persons who, like Mr. Mintz, owned transfer tax liens.
A prior action (Index No. 3376-1965) entitled Astoria Holding Corp. v. Old Dutch Lands (N. Y. L. J. March 25, 1966, p. 18, col. 1, affd. without opn. 27 A D 2d 905', affd. without opn. 20 N Y 2d 905) by the defendant in this action, Astoria, against the plaintiff in this action, Old Dutch (parties reversed), in part concerned the same parcels and the same in rem foreclosure action. That action was an article 15 of the Real Property Tax Law action, and it determined that when the city reconveyed to Mr. Mintz it divested the “ owners ” (predecessors to Old Dutch) of any “right to redeem” against Mintz and in consequence Old Dutch had no right, title or interest in the lands in issue. This is of course res judicata against Old Dutch and it is a binding precedent upon me insofar as the rights of the other owners (not parties to the prior action) are concerned.
It will be noted that in the prior action the ‘ ‘ owners ’ ’ sought to sustain the statute by claiming “ rights ”, in the nature of a right of redemption, under the terms of the statute.
May they now in the instant action, having no ‘ ‘ right ’ ’ in the real property, claim that the “ statute ” is unconstitutional? If it is indeed unconstitutional, then the city (not the “ owners ”) will have title to the property &emdash; only the reconveyance to Mintz (and from Mintz to Astoria) will fail. It is thus perfectly clear why Old Dutch in the first action did not raise the defense that Astoria’s title was defective since obtained via an unconstitutional statute, the claim asserted here.
* * *
*389 Bes Judicata and Collateral Estoppel
Defendants Astoria and Chase Manhattan (and derivatively the city and State) defensively assert the separate defense of res judicata or collateral estoppel. In brief they contend that the issue of the constitutionality of the statute should have and could have been raised by separate affirmative defense in the first action and the failure or neglect to do so now bars such a claim in this second action.
To further the interest of the State in reducing litigation and to protect parties from costly and repetitious suits, the courts have evolved the companion doctrines of res judicata and estoppel. Those doctrines are discussed in Commissioner v. Sumen (333 U. S. 591, 597-598):
“ The general rule of res judicata applies to repetitious suits involving the same cause of action * * * The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound ‘ not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. ’ * * * The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment * * *.
‘ ‘ But where the second action between the same parties is upon a different cause or demand, the principle of res judicata is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but ‘ only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. ’ * * * Once a party has fought out a matter in litigation with the other party he cannot later renew that duel. In this sense, res judicata is usually and more actually referred to as estoppel by judgment, or collateral estoppel.”
If the first and second actions involve the same cause of action, the first is determinative of all issues litigated or which might have been litigated. This is “ claim preclusion” — it bars in totality the bringing of the second suit. If the second action is not the same cause of action as the first, but rather a different cause of action, then the parties are collaterally estopped only as to those points actually litigated. This is ‘ ‘ issue preclusion ’ ’.
There is no doubt here that the plaintiff Old Dutch is estopped *390 from litigating Astoria’s title to the land. Even though that issue was determined in the first action by motion for summary judgment, it was a judgment on the merits. (Cf. Gundershein v. Bradley-Mahoney Coal Corp., 295 N. Y. 539; Mintzer v. Loeb, Rhoades & Co., 10 A D 2d 27.)
The question however is whether plaintiff is “ claim precluded ” so as to entitle defendants to summary judgment. This in turn depends on whether the first and second actions make the “ same claim ”. In this State, because the issue arises most frequently in negligence actions, the approach is “ same wrongdoer ”, “ same wrongful act ” and “ same accident ”,
But today the heavy emphasis is on the public policy of reducing litigation and against vexatious litigation. (Cummings v. Dresher, 18 N Y 2d 105, 107-108 [one who has had his day in court should not be permitted to litigate the question anew]; Statter v. Statter, 2 N Y 2d 668, 672 [issues necessarily involved in and determined by the first judgment]; Matter of Stilwell, 139 N. Y. 337; Commissioners of State Ins. Fund v. Low, 3 N Y 2d 590; see, also, CPLR 3017, subd. [a], 3018, subd. [b]; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5011.25.) On the basis of public policy, I am justified in considering — in addition to the test of “same claim’’ — the issue of reducing litigation and of vexatious litigation. I find that plaintiff is engaged in proscribed vexatious litigation. I am compelled to that view because the plaintiff has no reasonable expectation of gain from this second action. The purpose seems to be — “If we cannot gain, we shall see to it that the defendants do not gain”. Specifically I rule that this is the “ same claim ”, for the plaintiff, having failed to raise the constitutional issue as a separate affirmative defense in the first action, is ‘ ‘ claim precluded ’ ’ by that factor and also by public policy from bringing this action.
I do not however decide the very serious question of ‘ ‘ standing to sue ”. The general rule is that a litigant will not be heard to question the validity of a State statute except when it is or is about to be applied to his disadvantage. Whether the general rule applies to a claim of unconstitutionality should await a better case. (Cf. Dennis v. United States, 384 U. S. 855 with East Meadow Community Concerts Assn. v. Board of Educ., 18 N Y 2d 129, 135.)
* * *
Not all “defendants” however are barred by res judicata, they not having been parties to the first action. I therefore decide the constitutional issues. I do so rather summarily, the defendants not having briefed the issues and the plaintiff having done so inadequately.
*391 Constitutional Issues
The plaintiff recognizes, because it is bound by the judgment in the first action, that all “ owners ” were deprived of all right, title and interest in the property by the in rem foreclosure judgment of April 25,1955.
It is contended however that the enactment of the statute in issue (§ D17-25.0) gave “ owners ” a neto right — a right to apply for a reconveyance.
The main contention is that mere enactment of a statute is insufficient notice to old “ owners ” of their new “ right ”.
As discussed infra, the notice requirements of due process are relative to the factual situation. It should be noted at once that many, many thousands of “ owners ” had been wiped out prior to April 9, 1956 (the effective date of D17-25.0) by in rem foreclosure actions. The practical problem of “ notice ” was therefore insurmountable.
I discard the aphorism that everyone is charged with knowledge of the law. It is no longer so with respect to most criminal statutes. (See Lambert v. California, 355 U. S. 225.) It is an utter absurdity — as any Judge can attest — in other areas of the law.
However, on the issue here involved the cases do — and justly so — draw a distinction between notice of opportunity to present a claim and notice of opportunity to defeat a claim. Sometimes this is referred to as “permissive” vs. “vested” rights.
The “ owners ” had nothing in this case. The statute gave them a permissive right or opportunity to present a claim. This is quite different from a statute which would have divested an “ owner ” of a vested right.
In the first instance, the enactment of the statute will suffice as notice of the right to present a claim. In the latter instance the failure to afford “notice” (other than by the enactment per se) may be violative of due process. (Schroeder v. City of New York, 371 U. S. 208; Walker v. Hutchinson City, 352 U. S. 112; Covey v. Town of Somers, 351 U. S. 141; Mullane v. Central Hanover Trust Co., 339 U. S. 306; Griffin v. Griffin, 327 U. S. 220.)
It would be quite a different issue if the “ owners ” were to contend that they are entitled to “ notice ” of some kind, actual or constructive, when a lienor files an application for a reconveyance but the owner of the particular property does not. I consider the statute unjust in this regard — it should be amended to provide for “ notice ”, or lienors should be omitted *392 from its benefits. Indeed I would struggle to find a violation of procedural due process in such a situation if this plaintiff were an original 1 ‘ owner ’ ’— instead of one who “purchased” a cause of action. (See § D17-25.0, subd. d.)
Also, no contention is here made that the two-month ‘‘ Statute of Limitations ” for “ old ” owners is unconstitutional. Understandably so, because this plaintiff is guilty of laches. But I might rule otherwise if an original “ owner” had been later than two months in presenting a petition for reconveyance. I would believe also on the basis of decisions (which I do not bother to cite) that the four-month statute for “new” owner petitions is too short.
* * *
A substantial part of plaintiff’s brief is devoted to the constitutional requirement for a “ hearing ” in connection with the adjudicative function of an administrative agency (presumably the Board of Estimate). I frankly do not understand the point. I would agree that a hearing would be necessary to adjudicate between an “ owner ” petitioner and a “ lienor ” petitioner if the statute did not unqualifiedly give a preference to the ‘ ‘ owner ’ ’.
* * *
The contention is also made that “ owners ” vs. “ lienors ” are denied equal protection of the law. The point is inadequately briefed. I have already noted supra that the statute unjustifiably discriminates against “ owners ” in the kind of title obtained upon a reconveyance. An ‘1 owner’s ’ ’ deed revives the lien; a “lienor’s” deed wipes out the owner’s equity, if any.
A State has wide scope of discretion in enacting laws which affect some groups of citizens differently from others. (McGowan v. Maryland, 366 U. S. 420.) Statutory discrimination will not be set aside if any state of facts can justify it. However in enacting the in rem foreclosure statute (title D) the Legislature was scrupulous in insisting, as required by “ equal protection ”, that all (with reasonable exceptions) property be included in the in rem foreclosure. The State may not discriminate by “ selecting” some properties for in rem foreclosure and other for in personam foreclosure. (Nelson v. New York City, 352 U. S. 103.)
However I conclude that the difference in treatment between “ owners ” and “ lienors ” is saved from unconstitutionally in the statute under consideration by the statute giving the “ owner” a first right to apply for reconveyance. The dis *393 crimination therefore results from Ms inaction rather than by the terms of the statute.
The statute nevertheless should be amended to remove this discrimination.
# * *
Lastly I consider the contention that the reconveyance provisions of the statute constitute a ‘ ‘ gift or grant ’ ’ of City property in violation of the State Constitution (art. VIII, § 1).
I dispose quickly of the contention that city-owned land must be sold at public auction. (See New York City Charter, § 384; General City Law, § 23.) These are statutory not constitutional provisions. Section D17-25.0 is a later and special statute which supersedes the general provisions.
The constitutional provision prevents the city from conveying its property (Tarshis v. City of New York, 24 A D 2d 644, affd. 17 N Y 2d 451) without consideration or for an inadequate consideration. In the instant case the lienor Mintz paid $29,000 for the property and there is no proof of inadequacy at the time of sale. However I rest my ruling on this point on the rule of law that the particular provision of the Constitution does not prevent the city from recognizing a moral obligation, i.e., to reconvey property to owners or lienors foreclosed by an in rem proceeding. (People ex rel. Central Trust Co. v. Prendergast, 202 N. Y. 188; Matter of Mullane v. McKenzie, 269 N. Y. 369; see N. Y. Const., McKinney’s Cons. Laws of N. Y. Book 2, Constitution, art. VIII, § 1, n. 4.)
The defendants are granted summary judgment (CPLR 3212).