DREW, Justice
(concurring in judgment only):
I find it quite impossible to reconcile the views expressed in the majority opinion with the decision of this Court in Bonvento v. Board of Public Instruction, Fla.1967, 194 So.2d 605. The decision in Bon-vento upholds the acts of the Legislature of this State in giving $50,000 of the school funds of Palm Beach County to a student injured in the public schools of that County while this case rejects a similar act of the Legislature awarding $5,000 out of the public school funds of Dade County to a Dade County student injured in the public schools of that County. This result is exactly what I feared would arise out of the decision in Bonvento. In the concluding paragraph of my dissent in that case I inquired “[i]f we uphold this legislation, what is the limit upon the powers of the Legislature in the appropriation of public funds? What becomes of the checks and balances in government we so often speak of and, finally, by what constitutional standards can such legislation ever be judged?”
The Constitution of this State does not in my opinion authorize or empower the Legislature to give away the public funds of the State to persons it deems entitled to them for injuries which they have received because of the allegedly negligent act of the State or its subdivisions in the absence of a prior determination of legal liability made pursuant to a general law enacted in accordance with the provisions of Section 22 of Article III of the Constitution. The cornerstone of the majority decision in this case is, as I understand it, the false assumption that the failure to either advertise intention to apply for this legislation or to attach thereto an appropriate referendum was in itself sufficient to require that the act be stricken on constitutional grounds. I say this because in the decision, after referring to such legislation as a “local act,” it recites: “aside from any other aspects of constitutional weakness, the statute would necessarily fall on this ground alone.” Surely this conclusion cannot under any theory be reconciled with the decision in Bonven--to. In commenting on Bonvento the majority say we there held “that the notice of intent to introduce the act had been properly published.” The quoted language, in my judgment, was not justified in Bon-vento. In the first place, the Bonvento decision expressly recognizes the fact that the trial judge in that case disregarded the challenge to the act on this ground and after so stating concluded with the mere observation “we will notice it but only to remark that an examination of the notice convinces us ii conforms to our many expressions on the subject.” This last observation does not even attain the dignity of obiter. Moreover, the dissenting opinion in that case quoted at length the disclosures of the Journal with reference to the progress of this bill through the Legislature, and sets forth in detail the advertisement. There can be no doubt whatever that the bills advertised were not the bills passed by the Legislature. The bills actually passed in the Legislature were passed purely as claims bills under the-Constitution by a constitutional % vote and appeared in the statutes as general laws. There was not even a pretense that they were considered as special or local acts. The majority decision here therefore flies directly in the face of the decision in the Bonvento case on this point. It is also pertinent to observe that the act involved in this case was never considered to be a special or local law by any party connected with its introduction or passage. It was treated as a claims bill under the Constitution and enacted as such. This *557 fact is confirmed by the disclosures of the Journals of the Legislature.[1]
The legislative acts in the Bonvento case, after introduction as local bills, were amended, thereafter considered as claims bills and enacted as claims bills. In the Bonvento case the appropriation of $50,-000 was “from the general county school fund of the county in favor of John Bonvento” while in this case the appropriation of $5,000 was “from funds due the board of public instruction of Dade county * * * not specifically appropriated to a particular use to be paid to Edwin F. Rubino * * The language used in these claims bills emphasized the fact that both bills were prepared and enacted as claims bills, that both bills directed the payment of school funds of the county and the fact that both injuries were to students for damages sustained by virtue of certain alleged negligent acts occurring in the public schools without previous adjudication of liability or damages.
There is another matter discussed in the majority opinion and a conclusion reached there with which I cannot agree. Moreover, I find no precedent in this State for it. As I understand the opinion, it holds that any claim bill under Section 11, Article XVI of the Constitution relating “to a particular person in connection with a specific situation in which that person was involved” and affecting only one county, payable out of county funds, is a local act in contemplation of Section 21 of Article III of the Florida Constitution and that such claim bill may not be lawfully enacted without prior advertisement or having attached thereto a referendum. This holding would require every claims bill enacted under the provisions of Section 11, Article XVI of the Constitution not payable out of the general revenue fund or the funds of some state agency to be enacted as a local law and to be passed by two-thirds vote of the members of the House and Senate.[2] I do not believe this conclu *558 sion is authorized even if payment of tort claims is permissible under the Constitution. For the reasons pointed out in my dissent in Bonvento, I do not think such claims are within the contemplation of the Constitution.
I also read the majority opinion as holding that no claims bill, whether advertised or not or whether enacted pursuant to the constitutional provision, may be passed by the Legislature where it “related to a particular person in connection with a specific situation in which that person was involved” and is payable out of the funds of Dade County. I do not feel this conclusion is justified. The Dade County Home Rule Amendment is a part of the Constitution and must be construed along with Article XVI, Section 11 and Article III, Section 22. Effect can be given to all these provisions of the Constitution without doing violence to any of them.
In conclusion I again say as I said in Bonvento that in my judgment — in spite of the fact that the Legislature has for years treated the matter otherwise — there is no constitutional, nor for that matter rational, basis upon which public funds of this State can be parceled out by the Legislature for injuries to individuals arising out of alleged negligence of the State [3] or its subdivisions without previous adjudication of the questions of liability and damages by the courts pursuant to general law enacted for that purpose under Section 22 of Article III. When the people wrote into the Constitution this provision for bringing suit against the State, under elemental rules of constitutional construction it precluded the Legislature from accomplishing the same result in any other way — expressio unius est ex-clusio alterius. This is a profoundly important question. This practice of the Legislature, which according to my research has, like Topsy, just “growed”, should not continue. If the State is to be liable for the tortious acts of its agents, such liability should be determined and damages fixed in an orderly judicial proceeding so that all citizens would be treated alike. As it is now, this is simply not being done and to continue to require the citizen to beg for relief, and accept whatever may be offered, will only breed disrespect for government and could eventually result in fiscal chaos.
For the above reasons, as well as those set forth in my dissent in Bonvento, and not for the reasons given in the majority opinion, I concur in the judgment only.
HOPPING, J., concurs.

. Journal of the House of Representatives, Slay 25, 1967, page 691:
“Your Committee on Rules & Calendar herewith submits, as the Special Order Calendar under Rule 8.16 for Thursday, Hay 25, 1967, immediately following consideration of hills of a local nature, the consideration of the following bills together with their companion measures:

HB 1215 Claim Bill”

Journal of the House of Represnetatives, Hay 25, 1967, page 707:
“HB 1215 — A bill to be entitled An act for the relief of Edwin F. Rubino; making an appropriation to compensate him for medical expenses and. damages resulting from the injuries and wrongful death of his minor son, James Frederick Ru-bino; providing an effective date.
—was taken up.
On motion by Mr. Lewis, the rules were waived and HB 1215 was read the second time by title.
The Committee on Claims offered the following amendment:
In Section 2, on page 1, strike “the sum of fifteen thousand dollars ($15,000.00)” and insert “the sum of five thousand dollars ($5,000.00)”
Mr. Lewis moved the adoption of the amendment which was adopted. * * *
On motion by Mr. Lewis, the rules were waived and HB 1215, as amended, was read the third time in full and passed, as amended, hy the required Constitutional two-thirds vote of all Members elected to the House.”

Journal of the Senate, July 11, 1967:

“CLAIM BILL
SB 1071 was taken up, and unanimous consent was granted Senator Weissen-born to substitute HB 1215 in lieu thereof.
HB 1215— * * *
On motions by Senator Weissenborn, the rules were waived and HB 1215 was read the second time by title, the third time in full and passed, title as stated, hy the required Constitutional two-thirds vote of all members elected to the Senate.” (E.S.)

. Sec. 21, Art. Ill of the Constitution requires that the Journals of the Senate and House recite the fact that notice of intention to apply for such legislation was published. Rarely, if ever, do these relief acts (even when payable out of local funds) appear to have been published. See, for instance, the bills passed by the 1963 Legislature listed on page 839 of Yol. 1 of Gen.Acts of 1963 and those listed on pages 935-936, Vol. 1 (part 2) Gen. Acts of 1967 (Regular Session).

. In referring to Sec. 11, Art. XVI this Court, in a concurring opinion by Justices Terrell and Whitfield in the case of Amos v. Mathews (1930), 99 Fla. 65, 126 So. 308 (text page 334) said: “Both these classes of claims are personal; the first for extra compensation on an authorized contract, and the second for compensation on an unauthorized contract.”