JULIETTE N. IMBRICI et al., Plaintiffs, *v.* MADISON AVENUE REALTY CORPORATION, Defendant.

Supreme Court, Special Term, New York County, June 27, 1950.

*Eugene C. Wohlhorn* for defendant.

*Sanford Jarett* for plaintiff.

HAMMER, J. In this action to recover alleged excess rent, defendant moves for summary judgment. The plaintiff opposes, claiming first, that the arbitration had herein was not filed or confirmed; second, the declaration of public policy involved in the statutes; and third, that the court is bound by the controlling cases on the doctrine of law of the case.

At the outset, in *Matter of Heidelberger (Cooper)* (300 N. Y. 502) there was no filing or confirmation of the award at the time the motion to vacate was made. Copy of the award had been handed to the tenant's attorney on the day the award was made. Section 1463 of the Civil Practice Act provides that a motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after it is filed or delivered and it is not denied that the award was so delivered in this case, for the parties entered into a lease pursuant to the rent fixed in the award. They acquiesced in the

award on that date and the fact that the award was not specifically filed or confirmed within the statutory time did not render its effect any less binding on the parties. It was as between them a complete determination acquiesced in by both sides and a waiver of the necessity of any action in the court. This did not destroy the arbitration. It is, for all purposes, a special proceeding (Civ. Prac. Act, § 1459) in the Supreme Court and the acts of the parties had the same effect as a settlement after an action had been commenced. The court had before it a declaration of public policy as contained in the statute. It was the duty of the tenant if he felt aggrieved to have proceeded in the arbitration proceeding to call that matter to the attention of the court within the time limited by law. Beyond this a claim that the public policy of the State is affronted does not give the tenant any further rights.

In matrimonial actions where a judgment of divorce cannot be obtained by confession or on consent, or even granted on default, the court has refused to vacate a judgment after its rendition where it was attempted to be proved that the divorce was collusive (see *Gioia* v. *Gioia,* 245 App. Div. 373) and when an attempt was made to distinguish that cause on the ground that there had been laches, the same court overruled Special Term in *Furst* v. *Furst* (191 Misc. 699) and reversed Special Term on the authority of the *Gioia* case (*supra*) (275 App. Div. 991).

In regard to violation of public policy, Professor Simpson, prior to the reversal, in commenting on the Special Term decision in *Furst* v. *Furst* (*supra*) in " Survey of New York Law, 1947–1948 " (N. Y. U. L. Q. Rev., Nov., 1948, pp. 844–845) stated that if relief in equity against fraud in the court is to be granted to protect the public policy of the State, it should be by suit of the State and not at the behest of a party to the fraud, stating: " If it were to stand, every divorce granted in New York could be attacked by the divorced spouse long after the fact, on the mere allegation of collusion. The weapon for blackmail thus thrust into the hands of unbalanced men and women may well prove to be a serious matter."

If in matrimonial actions where the State has a direct interest it cannot be inquired into on the ground of collusion, similarly in this type of case the court will not permit a person to come in and allege that the arbitration was collusively fraudulent.

Nor does the fact that various motions had been decided affect the result herein.

The court is not unaware of the holding of the Appellate Division in *Endurance Holding Corp.* v. *Kramer Surgical Stores* (227 App. Div. 582) or the statements by the Appellate Division in *Hornstein* v. *Podwitz* (229 App. Div. 167, 169) as modified by the Court of Appeals in 254 New York 443, 450. Ordinarily, the doctrine enunciated in the *Endurance Holding* case would apply to an adjudication of an interlocutory order and be binding upon the court. However, where there has been a subsequent modification of the *significant facts or a change or development in the controlling legal principles,* such a determination may be rendered obsolete or inapplicable. The doctrine of *res judicata* as to the finality of the judgment and the doctrine of law of the case as to the binding effect of interlocutory orders in litigation are rules of convenience " designed to prevent repetitious law suits over matters which have once been decided and *which have remained substantially static, factually and legally* ", and must give way where there has been a change in the *fundamental controlling legal principles. " It was not meant to create vested rights in decisions that have become obsolete or erroneous with time* ". (*Commissioner* v. *Sunnen,* 333 U. S. 591, 599; italics supplied.)

The fundamental change occurred when the Court of Appeals in November, 1949, decided the *Heidelberger* case (300 N. Y. 502, *supra*). Nothing that was done prior thereto that would violate that decision can be held to be controlling. (*Commissioner* v. *Sunnen, supra*; to the same effect, see *Monteith Bros.* v. *United States,* 142 F. 2d 139 [C. C. A. 7th, 1944] ; *State Farms Ins. Co.* v. *Duel,* 324 U. S. 154, and *Walker* v. *Gerli,* 257 App. Div. 249.) In this view the court is fortified by the decision of Justice Steuer in *Laurel Printing Co.* v. *Starrett Realty Renting Co.* (N. Y. L. J., June 22, 1950, p. 2218, col. 7).

Motion for summary judgment is granted. Settle order.