64 So.2d 267 (1953)
WAGNER
v.
BARON et al.
Supreme Court of Florida, en Banc.
March 17, 1953.
Rehearing Denied April 28, 1953.
George H. Henry, Miami, for appellant.
William E. Walsh, Jr., Miami, for A.J. Baron, appellee.
Alexander S. Gordon, Miami, and Frederick N. Barad, Miami Beach, for Marine Engineering and Towboat Company, appellee.
ROBERTS, Chief Justice.
The question here is whether a judgment in bastardy proceedings instituted by the appellant under the provisions of Chapter 742, Florida Statutes, F.S.A., prior to its amendment in 1951 by Chapter 26949, Laws of Florida, Acts of 1951, is res adjudicata of a similar proceeding brought under the Act, as amended. The lower court so held, and dismissed the appellant's Complaint for Determination of Paternity of Child and for Child Support. This appeal followed.
The cases are legion which hold that res judicata is not a defense in a subsequent action where the law under which the first judgment was obtained is different than that applicable to the second action, or there has been an intervening decision, or a change in the law between the first and second judgment, creating an altered situation. Mission Theatres v. Twentieth Century-Fox Film Corp., D.C., 88 F. Supp. 681, 684; Sunnen v. Commissioner of Internal Revenue, 8 Cir., 161 F.2d 171, 178; Bush v. Commissioner of Internal Revenue, 2 Cir., 175 F.2d 391; Durham v. Crawford, 196 Ga. 381, 26 S.E.2d 778; Williams v. Ledbetter, 87 Ohio App. 171, 94 N.E.2d 377; Young Men's Christian Ass'n v. Sestric, 362 Mo. 551, 242 S.W.2d 497; Moseley v. Welch, 218 S.C. 242, 62 S.E.2d 313; Imbrici v. Madison Avenue Realty Corp., 199 Misc. 244, 99 N.Y.S.2d 762; Lasasso v. Lasasso, 1 N.J. 324, 63 A.2d 526; Beatty v. McClellan, 121 Ind. App. 242, 96 N.E.2d 675; Hurd v. Albert, 214 Cal. 15, 3 P.2d 545, 76 A.L.R. 1348; Mullane v. McKenzie, 269 N.Y. 369, 199 N.E. *268 624, 103 A.L.R. 758; Third National Bank of Louisville v. Stone, 174 U.S. 432, 19 S.Ct. 759, 43 L.Ed. 1035; State Farm Mutual Automobile Ins. Co. v. Duel, 324 U.S. 154, 65 S.Ct. 573, 89 L.Ed. 812; Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 599, 68 S.Ct. 715, 720, 92 L.Ed. 898; see also 2 Freeman, Judgments, 1925, 5th ed., Sec. 713; 30 Am.Jur., Judgments, Sec. 206, page 943; 50 C.J.S., Judgments, § 650, page 92.
"The doctrine of res judicata as to the finality of the judgment and the doctrine of law of the case as to the binding effect of interlocutory orders in litigation are rules of convenience `designed to prevent repetitious law suits over matters which have once been decided and which have remained substantially static, factually and legally (and must give way where there has been a change in the fundamental controlling legal principles). It is not meant to create vested rights in decisions that have become obsolete or erroneous with time.'" Imbrici v. Madison Avenue Realty Corp., supra, [199 Misc. 244, 99 N.Y.S.2d 764] citing Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 599, 68 S.Ct. 715, 92 L.Ed. 898.
Clearly, a judgment is not res judicata as to rights which were not in existence and which could not have been litigated at the time the prior judgment was entered. Mullane v. McKenzie, supra; Lasasso v. Lasasso, supra; Moseley v. Welch, supra; Williams v. Ledbetter, supra. In the instant case, the appellant's only rights under the law prevailing at that time was to obtain an adjudication of the paternity of her child and to obtain from the putative father "all necessary incidental expenses attending the birth of the said child" and "not exceeding fifty dollars * * * yearly, for ten years toward the support, maintenance and education of said child". Act of Jan. 5, 1828, and appearing as Chapter 742, Florida Statutes, prior to its amendment in 1951 by Chapter 26949. Under the terms of the 1951 Act, the putative father may be required to pay "periodically for the support of such child such sum as shall be fixed by the court in accordance with the provisions of this act." The monthly contributions fixed by Section 742.041 of the 1951 Act range from $40 per month for a child under the age of six years, to $110 per month for a child between 15 and 18 years of age. Her right to receive the vastly increased contributions for the support of the child was not in existence at the time she first instituted proceedings to compel the putative father to contribute to the support of the child; and the judgment in such suit should not, then, be deemed to be an adjudication of her rights with respect to the contributions provided for in the 1951 Act. As stated in Mullane v. McKenzie, supra [269 N.Y. 369, 199 N.E. 625], "The earlier decision may be a conclusive adjudication of the petitioner's rights, existing then; it cannot be an adjudication of rights thereafter conferred by law, or bar a new proceeding to vindicate new rights."
Moreover, to apply the principles of res judicata in the instant case would be to penalize the appellant for her diligence in prosecuting her action against the putative father to obtain support for her child under the Act of Jan. 5, 1828, and would reward the indolent mother who failed to so proceed. It would result in applying one rule of law to the appellant, and another rule of law to other unwed mothers in exactly the same circumstances, the only difference being that the appellant was diligent and the other unwed mothers were not. The injustice of any such application of res judicata is immediately apparent.
We hold, then, that the former judgment is not res adjudicata of the matters presented by the instant suit, including the question of paternity as well as the question of the amount, if any, to be awarded as support for the child. Accordingly, the order of dismissal should be and it is hereby reversed and the cause remanded for further proceedings consistent herewith.
Reversed and remanded.
TERRELL, HOBSON and DREW, JJ., concur.
SEBRING and MATHEWS, JJ., dissent.
*269 THOMAS, J., dissenting with opinion.
TERRELL, Justice (concurring).
Appellant precipitated this suit to require appellee A.J. Baron, the father of her bastard child, to contribute to its support and education as required by Chapter 26949, Acts of 1951, hereinafter referred to as the New Act. The New Act by title and terms not only repealed Chapter 742, F.S.A., hereinafter referred to as the Old Act, but it was substituted for and in place of the Old Act. It was accordingly the law governing the subject matter from its effective date, June 9, 1951.
The Old Act was passed more than 100 years ago and required the father of a bastard child to contribute not exceeding fifty dollars annually for his support. That amount would not supply him with candy and ice cream cones at present prices. The New Act requires the father of a bastard child to contribute $40.00 monthly from birth to 6th birthday for its support, $60.00 monthly from 6th to 12th birthday, $90.00 monthly from 12th to 15th birthday and $110.00 monthly from 15th to 18th birthday. These amounts may be increased or diminished by the court in his discretion, circumstances of the child and ability of the father to contribute, being his guide.
In Rooney v. Teske, Fla., 61 So.2d 376, and in Phillips v. McGriff, Fla., 61 So.2d 634, we held that, even though born before the effective date of the New Act the father of a bastard child was required to support it according to the terms of said Act. It appears that prior to the effective date of the New Act appellant secured an adjudication of paternity and an order for support of her bastard child under the Old Act. Since the Old Act was repealed, the New Act substituted in its place and paternity adjudicated under the Old Act, I think all the mother was required to do was to petition the court to decree support as required by the New Act. There was no reason for the New Act except to provide a reasonable living scale for bastard children. It is not even suggested that it prescribes a basis of support out of harmony with present day cost of food, raiment and schooling, let alone nurture and baby sitting.
It seems to me that the only real point for determination is whether or not gentlemen(?) who sneak around and propagate bastards may be required to support them in keeping with their means and ability to meet present economic standards.
I think this question impels an affirmative answer. The legislature certainly had power to enlarge the pattern of support. The wonder is that they waited so long in the face of rising prices to do so. When the Old Act was passed a midwife's charge for officiating at the accouchement was five dollars. You could buy a 300 pound steer for four dollars, pork was two cents the pound, eggs were ten cents per dozen, corn and potatoes were 25 cents per bushel and you could hire a room in the best hotel in Jacksonville for fifty cents. It was the good old days when our great, great grandfathers and mothers bought their snuff and tobacco in bladders, cured their sausage in chitterlings, read their Bibles on their bellies in front of the log fire and planted corn when the oak leaves got as big as possum ears. Such were the criteria that determined the standard for a bastard's support at that time. The sole purpose of the New Law was to raise that standard in line with present commodity and schooling prices and that it should be so read and interpreted. The New Act was one of common justice to the beneficiaries and should not be construed so as to defeat its purpose. Neither should it be construed to put an economic premium on a bastard's support. I do not think the doctrine of res judicata has any place whatever in this litigation. I think it is out of all reason to hold that the legislature intended that the father of last year's bastard might contribute support by a standard fixed more than 100 years ago, while the father of this year's bastard must support at present commodity prices. I cannot read any such logic in the New Act.
I think the judgment should be reversed with directions to enter a judgment in harmony with the views expressed in this *270 opinion. I therefore concur in the opinion of Mr. Justice ROBERTS.
HOBSON and DREW, JJ., concur.
THOMAS, Justice (dissenting).
The corporation was made a party because one half of its stock was owned by A.J. Baron, but there is no need further to mention it because the controversy here is one between the appellee Baron and the appellant; so we will refer to the appellee in the singular.
Suit was brought by the appellant charging that the appellee was father of her illegitimate child, asking that he be declared so, and seeking an award of a sum for permanent support of the offspring.
When the matter reached the chancellor he dismissed the bill of complaint because (1) the child was born before the effective date of Chapter 26949, Laws of Florida, Acts of 1951, which he thought had no retroactive effect, and (2) there had been an adjudication under the statute which was superseded by this law.
This court has recently, 14 November 1952, decided the first point contrary to the chancellor's view, in Rooney v. Teske, 61 So.2d 376, and Phillips v. McGriff, 61 So.2d 634, which opinions were not filed, we state in justice to the chancellor, until after he had ruled in the present case. The first question is therefore eliminated from discussion or decision, and we will concentrate on the second.
Under the former statute, Section 742.01 et seq., Florida Statutes 1949, and F.S.A., a woman pregnant, or delivered of a bastard child, could complain to a county judge or justice of the peace who was authorized to issue process against the accused father and, if he thought sufficient cause appeared, to bind the supposed father over to the circuit court. There a jury was required to determine the issue of parenthood. If the accused was found to be the father he was "condemned" to pay the expenses of birth and not more than fifty dollars yearly for ten years for maintenance and education of the child. Provision was made for bond to secure the payments, and for imprisonment upon failure to meet the obligation.
Appellee resorted to this law and secured a judgment under it in nineteen forty-nine.
Then the legislature, in nineteen fifty-one, repealed the statutes just analyzed and enacted in their stead laws permitting an unmarried woman pregnant or delivered of a bastard child to proceed in chancery to have the paternity established as the basis for an order securing support for the child and so on.
Proceedings under the first statutes were civil in nature, State v. Rowe, 99 Fla. 972, 128 So. 7, although punishment attached upon failure to comply with the "judgment." Obviously the procedure under the present statutes is purely civil.
It seems to this writer that all the elements of the doctrine of res judicata, which have so often been defined as to need no repetition, are present, and when the very purpose of the doctrine is borne in mind there is every reason to invoke it here. A decision that appellant, who has resorted to the former statutes and been awarded a verdict finding the accused man the father of her child and a judgment against him for the stipulated amount would mean, of course, that instead of strife having ended and certainty as to individual rights having been produced by the adjudication, Hay v. Salisbury, 92 Fla. 446, 109 So. 617, there would be an invitation to all similarly situated to come into court and get a readjudication of the same issue in the hope that the second award would be an enlargement of the first.
To repeat, the prerequisites of res judicata are present and the reason for it apparent.
I quite agree with the chancellor's second reason for dismissing the bill, but I am forced to disagree with his first reason because of the commitments in the two recent decisions.
Therefore I dissent from the opinion of the majority of the Court.
SEBRING and MATHEWS, JJ., concur.