606 So.2d 1183 (1992)
CITY OF MIAMI, Appellant,
v.
Ronald V. BELL, Appellee.
No. 91-1878.
District Court of Appeal of Florida, First District.
September 16, 1992.
A. Quinn Jones, III, City Atty. and Ramon Irizarri and Kathryn S. Pecko, Asst. City Attys., Miami, for appellant.
Richard A. Sicking, Miami, for appellee.

ON MOTION FOR REHEARING
ZEHMER, Judge.
Upon consideration of the City's motion for rehearing, the original opinion filed in this case is withdrawn and the following opinion is substituted therefor. In light of the revisions in this substituted opinion, the motion for rehearing is denied.
This is another of the many workers' compensation appeals by the City of Miami *1184 arising out of the supreme court's decision in Barragan v. City of Miami, 545 So.2d 252 (Fla. 1989). This appeal questions the retroactive application of that decision, whether the claim for past benefits offset in violation of state law is barred by the doctrine of res judicata, whether the award of a 10% penalty is error, and in what manner the Barragan offset of combined workers' compensation and disability pension benefits in excess of claimant's average monthly wage is to be accomplished. Finding no error in any of these respects, we affirm the appealed order.
In January 1985, Ronald Bell, a firefighter employed by the City, was injured in a compensable accident. After a period of temporary disability, he began drawing permanent total disability (PTD) compensation benefits on September 24, 1987, the same date that his service-connected disability retirement pension benefits also became effective. From that date until August 1, 1989, the City offset Bell's PTD benefits in the amount of $1,330.03 per month against his disability retirement monthly pension benefit of $2,594.83 on the authority of the City of Miami ordinance held invalid in Barragan.[1] As a result, the maximum combined benefits paid to Bell during that period never exceeded his monthly pension amount and, of course, never reached his average weekly wage of $809.67 ($3481.58 monthly). Effective August 1, 1989, shortly after the supreme court had denied rehearing in its Barragan decision on July 14, 1989, the City ceased taking this offset and began paying Bell his full PTD benefits of $1,320.10 plus full pension benefits of $2,594.83 monthly. The City did not give retroactive effect to the Barragan decision and thus did not pay any past offset benefits.
On July 24, 1989, Bell filed a claim for the withheld benefits under the Barragan decision. On August 14, 1989, the City filed its notice to controvert[2] Bell's recently filed claim on the ground that claimant had been paid all benefits due. In view of the City's action terminating the offset as of August 1, 1989, its notice to controvert must be construed as implicitly rejecting any retroactive application of the Barragan decision. After the hearing, the judge of compensation claims ordered the City to pay the full amount of past benefits due under the Barragan decision from September 24, 1987, through August 1, 1989, and awarded a 10% penalty pursuant to section 440.20, Florida Statutes (1985), based on the City's failure to controvert the claim within the 10-day period specified in subparagraph (6) of that section. The order recognized that the City could limit combined benefits to the amount of claimant's average weekly wage pursuant to the Barragan decision, resulting in a deduction of $433.35 from total monthly benefits of $3914.93, but made no provision in the order for effectuating this offset. The judge rejected the City's contention that Bell's claim was barred under the doctrine of res judicata by reason of a previously filed claim and award in 1988 for medical benefits.[3]
The City raises four points on this appeal. After hearing lengthy oral arguments by the parties and giving this case careful consideration, we affirm the order in all respects for the reasons now set forth.

I.
The City's first point contends that the order errs in applying the supreme court's Barragan decision retroactively. The City argues that Barragan overruled numerous decisions of Florida intermediate appellate *1185 courts upholding the offset under the Miami ordinance after the repeal of section 440.09(4) in 1973, and that the City had detrimentally relied on these decisions during the years it had taken the offsets pursuant to the ordinance invalidated by the supreme court's "surprise" decision holding that the ordinance "flies in the face of state law." Retrospective application of Barragan, the City argues, will, by judicial construction, abridge and impair the rights, positions and courses of action validated by the appellate courts of this state until Barragan was decided by the supreme court. Further, the City argues, Barragan should be applied prospectively, and not retrospectively, to avoid "inequitable results" because otherwise Bell and other similarly situated claimants will receive monies that they had no expectation they were legally entitled to receive and that they did not attempt to secure until after the supreme court "dropped" the Barragan bomb.
We can readily understand that the Barragan decision has generated something of a financial crisis for the City, and we are not entirely unsympathetic to the City's impassioned plea for relief. However, we find no valid legal basis to support the City's arguments against the retroactive application of the Barragan decision, this court having previously decided this point to the contrary in City of Miami v. Burnett, 596 So.2d 478 (Fla. 1st DCA 1992). In that case we followed our decision in City of Daytona Beach v. Amsel, 585 So.2d 1044 (Fla. 1st DCA 1991), which held that Barragan is to be retroactively applied to compensable injuries occurring after the July 1, 1973, repeal of section 440.09(4).[4]

II.
The City's second point contends that it was error to rule that Bell's claim for the offset was not barred as being mature when the earlier claim for medical benefits was filed in 1988. The City points out that section 440.09(4), which had authorized the offset, was repealed in 1973, so that Bell's claim for past monies withheld pursuant to the City's offset was mature at the time of the 1988 proceeding on Bell's claim for medical benefits and thus should have been asserted in the claim for medical benefits to avoid an improper "splitting" of claims. Since the offset claim was not filed at that time, the City argues, it is now barred by the doctrine of res judicata.
There is no merit in this argument. In Wagner v. Baron, 64 So.2d 267 (Fla. 1953), the supreme court held:
The cases are legion which hold that res judicata is not a defense in a subsequent action where the law under which the first judgment was obtained is different than that applicable to the second action, or there has been an intervening decision, or a change in the law between the first and second judgment, creating an altered situation. [Citations omitted.]
"The doctrine of res judicata as to the finality of the judgment and the doctrine of law of the case as to the binding effect of interlocutory orders in litigation are rules of convenience `designed to prevent repetitious law suits over matters which have once been decided and which have remained substantially static, factually and legally (and must give way where there has been a change in the fundamental controlling legal principles). It is not meant to create vested rights in decisions that have become obsolete or erroneous with time.'" [Citations omitted.]
64 So.2d at 267-68 (emphasis added). In Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, 210 So.2d 750, 753-54 (Fla. 4th DCA 1968), the court explained that the doctrine of res judicata extends only to legal rights and relations of *1186 the parties as fixed by the facts determined by that judgment; when other facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the respective parties, the issues are no longer the same and the former judgment cannot be pleaded in bar of the second action.
Because the supreme court's Barragan decision changed the applicable law from that previously announced in the intermediate appellate court decisions, Bell's claim is governed by the exception to the bar of res judicata recognized in the abovecited decisions. The City had accepted Bell as PTD in 1987 and was paying him full PTD compensation benefits, although taking an offset in the amount of such benefits against his disability pension benefits in accordance with the intermediate appellate court decisions then validating that course of action. As noted by the supreme court in Barragan, under the case law existing at the time this claim was filed, several appellate opinions had upheld the City's right to take the offset under the Miami pension ordinance even though section 440.09(4) had been repealed in 1973. Bell's claim for medical benefits awarded in the order of May 25, 1988, did not include any claim for compensation benefits; that order did not purport to adjudicate in any manner Bell's future right to PTD compensation benefits without offset should the law change. Obviously, after the City began taking the offset in 1987, Bell could have made a claim that the City's ordinance was unconstitutional, as Barragan had done. But Bell was not obliged to do so in order to prevent the doctrine of res judicata from barring a future claim in the event the governing law should change, so long as such claim was not otherwise barred by applicable statutes of limitation, which it was not in this instance.

III.
The City's third point contends that it was error to award a 10% penalty under section 440.20, Florida Statutes (1985),[5] on the retroactively awarded setoff benefits. The appealed order recites in respect to this award:
The claimant is entitled to a penalty of 10% on all benefits awarded by this order. See Brazil v. School Board of Alachua County, 408 So.2d 842 (Fla. 1st DCA 1982). Claim was filed July 19, 1989. The City certainly knew of the claimant's entitlement on July 14, 1987 [sic], when the Supreme Court denied rehearing in Barragan, but they did not pay nor did they file a notice to controvert. The notice to controvert dated August 8, 1989, was not timely. The City has not shown that the failure to pay or to file a timely notice to controvert was beyond its control. § 440.20(7), Fla. Stat. (1984).
We find no error in this ruling and hold that the 10% penalty was correctly awarded under the particular circumstances of this case.
Section 440.20, entitled "Payment of compensation," makes the Florida Workers' Compensation statute self-executing by requiring that payments by the employer or carrier are to be made when due without the claimant having to file a formal claim pursuant to section 440.19. Section 440.20 sets the time when payment of compensation benefits is due under various circumstances. One of the enforcing elements of this self-executing procedure is the requirement to add a penalty to the award of benefits, with certain exceptions, whenever the employer or carrier has failed to make payments of benefits when due. Subsection 440.20(2) states that payment of benefits for total disability is due within 14 days after the employer has knowledge of the injury giving rise to the claimant's right to benefits. Subsection 440.20(4) states that wage loss benefits shall be paid "within 14 days of the date upon which the carrier or employer has *1187 knowledge of the compensable wage loss." Subsection 440.20(7), Florida Statutes (1985), provides in pertinent part:

If any installment of compensation for death or dependency benefits, disability, permanent impairment, or wage loss payable without an award is not paid within 14 days after it becomes due, as provided in subsection (2), subsection (3), or subsection (4), there shall be added to such unpaid installment a punitive penalty of an amount equal to the greater of 10 percent of the unpaid installment or $5, which shall be paid at the same time as, but in addition to, such installment of compensation, unless notice is filed under subsection (6) or unless such nonpayment results from conditions over which the employer or carrier had no control. ...
(Emphasis added).
This statutory language is clear and unambiguous. The subsection plainly states that, as a consequence of an employer's failure to pay compensation benefits when due (i.e., within 14 days after the employer gains knowledge of facts that require payment of PTD benefits under chapter 440), "there shall be added to such unpaid installment a punitive penalty" of 10%. The use of the word "shall" in this context is mandatory in meaning. See Sigg v. Sears, Roebuck & Co., 594 So.2d 329 n. 1 (Fla. 1st DCA 1992); City of Miami v. Watkins, 579 So.2d 759 (Fla. 1st DCA 1991). Payment of the statutory penalty required by subsection (7) can be excused only if a timely and appropriate notice to controvert has been filed in accordance with subsection (6) or if the employer's nonpayment has resulted from conditions over which the employer had no control. That the employer or carrier acted in good faith in reasonably disputing liability for the claimed benefits is immaterial unless compliance with the requirements of the statutory exception is shown. The burden of proving that penalties are not due based on the exceptions in subsection (7) is on the employer or carrier. All American Vending v. Kunzelman, 482 So.2d 609 (Fla. 1st DCA 1986). The City failed to carry that burden in this case.
The City accepted and had been paying Bell's claim for PTD compensation benefits. It impermissibly withheld payments under the pension offset provision subsequently held illegal in the Barragan case. It could well be argued that the City's failure to pay the offset benefits within 14 days after the City accepted Bell as PTD triggered the penalty provision in subsection (7), even though the City was subsequently made aware of the invalidity of its ordinance through the supreme court's decision in the Barragan case. But the ruling of the judge of compensation claims below was not based on this theory, and we do not consider it necessary to pass on the validity of this theory in resolving this appeal. Rather, we look only to the City's conduct after the Barragan case became final.
We agree with the ruling of the judge of compensation claims that by the time rehearing was denied by the supreme court in Barragan on July 14, 1989, the decision was definitely final and the City then had indisputable knowledge that it was obligated by the provisions of chapter 440 to pay Bell's PTD and pension benefits without offset pursuant to the invalid ordinance. The Barragan decision contained no language stating that the declared invalidity of the City's ordinance was not retroactive in effect, so the City also had knowledge that it was liable, or at least that it would most probably be held liable, to pay all previously offset benefits that had been withheld. See City of Miami v. Burnett, 596 So.2d 478 (Fla. 1st DCA 1992); City of Daytona Beach v. Amsel, 585 So.2d 1044 (Fla. 1st DCA 1991). The City's having this knowledge meant, under any construction of section 440.20, that all such benefits were due to be paid at least by July 28, 1989, that is, within 14 days after the supreme court's July 14 order.
On August 1, the City manifested recognition of its obligation to pay Bell under the *1188 Barragan decision when, without an award by a judge of compensation claims, it initiated payment of workers' compensation and pension benefits without the pension offset.[6] The City decided, however, without giving notice to the claimant or the Division, that it would not pay the moneys previously withheld under the pension offset when it implemented this change on August 1. While the City was entitled to take the risk of an adverse decision on the retroactivity of the Barragan decision, in electing to do so the City necessarily incurred the risk of having to pay the penalty specified in subsection 440.20(7).
There is no dispute on this record that the City declined to pay past offset benefits within 14 days after they became payable pursuant to the supreme court's decision in Barragan. The City's failure to pay these benefits within 14 days after it had knowledge they should be paid requires assessment of the 10% penalty unless the City has shown that it is excused from such payment, either because it timely filed a notice to controvert authorized in subsection 440.20(6) or because its failure to timely pay was due to conditions over which it had no control. This record does not support excuse on either ground.
Subsection (6) provides:
(6) If the employer or carrier initially controverts the right to compensation, it shall file with the division, on or before the 21st day after it has knowledge of the alleged injury or death, a notice, in accordance with a form prescribed by the division, stating that the right to compensation is controverted, the name of the claimant, the name of the employer, the date of the alleged injury or death, and the grounds upon which the right to compensation is controverted, together with a written explanation setting forth in detail the reason or reasons why the claim has been controverted; and a copy of such notice shall be furnished by the carrier to the employee and employer. If the employer or carrier initially accepts the claim but subsequently controverts the claim, it shall file with the division a notice to controvert, within 10 days after the date of initial cessation of benefits, stating the reasons for the delayed controversion; and a copy of such notice shall be furnished by the carrier to the employee and employer.
(Emphasis added.) This is not a case in which the City initially controverted the claimant's right to compensation; the City had previously accepted Bell as PTD and was paying him PTD benefits. For this reason, the provision authorizing the employer or carrier to file a notice to controvert within 21 days "after it has knowledge of the alleged injury" simply is not applicable. Neither is the 10-day notice provision in subsection (6) applicable; this is not a case where the City had been paying, but then ceased paying, disputed benefits. In any event, even if the 10-day notice provision could be considered to authorize the City to controvert liability for past compensation benefits withheld, its notice to controvert such payments, filed August 14, was not filed within 10 days (or even within 21 days) after the City had knowledge on July 14 that the disputed compensation payments were required to be paid to Bell. We recognize that the notice to controvert was filed on the 21st day after the claimant filed his claim on July 24, but that fact does not make it timely. The time constraints prescribed in section 440.20 setting the due dates for payment commence from the date an employer or carrier has the requisite knowledge that compensation is payable, not from the date a formal claim for benefits is filed pursuant to section 440.19. The record clearly supports the judge's finding that the City had requisite knowledge as of the July 14 date that the disputed compensation was payable to Bell.
The record also supports the finding of the judge of compensation claims that the *1189 City did not show that its failure to timely pay or timely file a notice to controvert was due to conditions beyond its control. The City did not attempt to make any showing that its failure to timely pay was due to such conditions.
Finding no basis for error in the judge's award of the 10% penalty pursuant to subsection 440.20(7) under these circumstances, that award is affirmed.
This issue was requested to be considered by the court en banc based on the views expressed in the dissenting opinion. With one judge recused, six judges voted in favor of considering the issue en banc and six voted against en banc; thus, the case remained with the panel. In view of this close vote, we certify the following question of great public importance to the supreme court:
IS SECTION 440.20(7) APPLICABLE UNDER THE CIRCUMSTANCES OF THIS CASE, AND IF SO, CAN THE CITY OF MIAMI, BE LEGALLY EXCUSED FROM PAYING A PENALTY PURSUANT TO THAT SECTION ON THE AMOUNT OF PENSION OFFSET MONIES WITHHELD IN THE PAST BECAUSE THE CITY DID SO IN GOOD FAITH RELIANCE ON THE VALIDITY OF THE CITY ORDINANCE AUTHORIZING THE PENSION OFFSET IN VIEW OF THE APPELLATE DECISIONS APPROVING ITS VALIDITY?

IV.
The City's fourth point raises an interesting question regarding the implementation of the "Barragan offset" authorized in the final order. This offset derives solely from the supreme court's opinion in Barragan, wherein it directed:
The employer may not offset workers' compensation payments against an employee's pension benefits except to the extent that the total of the two exceeds the employee's average monthly wage.
545 So.2d at 255.[7] The order recognized this offset was appropriate in the amount of $433.35 per month, but made no provision for giving effect to this offset in the decretal portion of the order. Because the order is silent as to how the offset is to be recouped, the City asks this court to specify that the offset be taken by the City rather than the pension fund. The claimant responds by urging that the order was not in error in failing to direct how this offset would be accomplished and, alternatively, advances the legal theory that any excess over average monthly wage should create a lien in favor of the pension fund to the extent of such excess.
We decline to decide this dispute. It is most significant that the supreme court in Barragan expressly declined to recognize any legal distinction between the City and the pension fund trustees regarding the subject matter of this litigation. The court rejected the City's argument that the pension fund was an indispensable party, saying, "After all, the city is responsible for the payment of both workers' compensation and pension benefits regardless of the funds from which these monies are withdrawn, and the city has strenuously litigated *1190 this case on behalf of its pension fund throughout these proceedings." 545 So.2d at 253. We likewise decline to treat the City as a different legal entity from its pension fund. Accepting the supreme court's characterization of the City's legal responsibility for payment of both workers' compensation and disability pension benefits as correct, it would seem that how the City gives effect to the Barragan offset and allocates the excess of benefits over average monthly wages is an internal municipal matter more appropriately resolved by the City alone. No legal basis exists for this court to resolve the dispute presented by the City under this point.
The appealed order is in all respects AFFIRMED.
ERVIN, J., concurs.
BOOTH, J., dissents in part with opinion.
BOOTH, Judge, dissenting in part:
I dissent from the affirmance of penalties awarded under section 440.20, Florida Statutes. The majority's efforts to fit the facts of this case under subsection (6) and, failing that, subsection (7), of section 440.20, fall short of what the law requires in applying a penalty statute. A penalty statute must clearly state the conduct that is the basis for its application. Only in this way does the statute give notice and opportunity to avoid the proscribed conduct. The corollary of the clarity requirement is the rule that penalty statutes must be strictly construed in favor of the party sought to be penalized.[1] The rule is stated as follows:[2]
Penalties are not favored, and should not be imposed except in cases which are clear and free from doubt. The law must be clear in order to exact penalties in civil cases
In keeping with the above-stated clarity requirement is the rule that penalty statutes be strictly construed, viz:[3]
Statutory provisions for penalties must be strictly construed, and may not be extended by construction to acts which are not within the intention of the legislature to penalize. It has even been said that such provisions must not be construed to include anything beyond their letter even though within their spirit. One who seeks to recover a penalty imposed by statute must bring his case clearly within the terms of the statute.
The instant case involves the ten-percent penalty of subsections 440.20(6) and (7), a penalty imposed for delay in paying or controverting the right to compensation. In order to impose the penalty here, we must be able to say, clearly, that the pay-back of retirement benefits was "compensation." But this is not at all clear. Barragan,[4] citing Jewel Tea,[5] holds that the JCC has jurisdiction of claims to recover offsets taken in violation of section 440.21, regardless of whether the offsets are stated to be against workers' compensation benefits or against retirement or other benefits.
Neither Jewel Tea nor Barragan holds, however, that the restored amounts are to be treated as "compensation" under Chapter 440 or for the purposes of penalties.[6] In the instant case, the restored benefits were retirement benefits. Benefits provided *1191 under Chapter 440 have been paid.[7]
The next stumbling block to the imposition of penalties is knowing when the offset amounts claimed first became due and owing for the purpose of the time requirements of the penalty statute. This is a subject fit for debate among legal scholars and jurists, but the answer is far from clear and should, on that basis alone, preclude penalties. In this case, the penalty is calculated on amounts offset prior to Barragan's holding that the ordinance was invalid. The offset was made pursuant to city ordinance 40-207(J). Several appellate decisions held that ordinance valid, even after the repeal in 1973 of section 440.09(4), Florida Statutes.[8]
From September 1987 to August 1989, retirement benefits were offset under what we now know was an invalid ordinance. Were those offset amounts "due" for penalty purposes before Barragan or before Amsel,[9] holding Barragan was retroactive? If appellant "should have known" the ordinance was invalid, did that make the offset amounts due? At what point did this imputed knowledge make the offset amount due? Should not appellee, who now seeks to penalize this delay, also be held to know that the ordinance would eventually be ruled invalid and therefore be required to timely give notice of a claim that included penalties under subsection (7)?[10]
The majority forgives appellee's failure to claim the offset in his 1988 claim because, under the existing law, there was no basis for such a claim. A different rule is applied to appellant, however, who must now pay the offset amounts based on the retroactive application of a change in the law and pay a penalty to boot. Where was appellant's opportunity to avoid the penalty? What was the effect of the ordinance remaining on the books that authorized the offset?
The fact that these questions can be raised now by those of us having knowledge of the facts and changes in the law, shows that the penalty of subsections 440.20(6) and (7) does not "fit" here and should not be imposed. The statute should not be used to penalize conduct after-the-fact based on amounts that become due because of a change in the law.
Despite the confusion of the majority's opinion, the net result of that opinion is clear: appellant could only have avoided this penalty by complying with Barragan in 1987, two years before that case was decided.
Not surprisingly, the majority cites no authority for the proposition that a party can be subject to penalties for failing to anticipate the holding of a case. Only a soothsayer with a crystal ball could have predicted in 1985, when the original claim arose, or in 1987, when the offsetting began, that Barragan would be decided (July 1989) and, eventually (October 1991), be held to apply retroactively. Yet the JCC ruled that appellant's failure to file a notice *1192 to controvert within ten days after the denial of rehearing in Barragan subjected it to the ten-percent penalty. Why the denial of rehearing in that case should fit either as an "initial cessation" of benefits under subsection (6), or as the date an "installment of compensation ... becomes due" under subsection (7), as held by the majority, is not explained. In fact, the statute provides no point in time for filing a notice to controvert under these facts.
There is only one provision that fits, viz: the provision that the penalty is inapplicable where "nonpayment results from conditions over which the employer or carrier had no control." Cases construe that provision to prevent the imposition of the penalty where the employer has a valid excuse,[11] and to require a finding of fault.[12] For this reason, in addition to the other basis of section 440.20 inapplicability, the penalty award should be reversed. In all other respects, I concur in the opinion.
NOTES
[1] The order determined that the PTD figure of $1,330.03 was excessive and that the correct monthly amount should have been $1,320.10, but this is not an issue on appeal.
[2] Although the notice was dated August 8, 1989, it was not filed with the Division of Workers' Compensation in Tallahassee until August 14.
[3] In 1988, Bell filed a claim for payment of certain medical bills related to his compensable injury. After a hearing, an order was entered May 25, 1988, pursuant to a joint stipulation of the parties, requiring the City to pay the disputed medical expenses.
[4] This case is to be distinguished from those cases involving compensable injuries that occurred prior to the repeal of section 440.09(4) in 1973. E.g., City of Miami v. Jones, 593 So.2d 544 (Fla. 1st DCA 1992).
[5] The pertinent provisions of section 440.20 had not been significantly changed between 1985, the year in which Bell sustained his compensable injury, and 1990, when this matter came on for hearing.
[6] Parenthetically, we note that even the August 1 date was past the 14-day limitation in the statute, but Bell has made no issue of this deficiency.
[7] The limitation of combined benefits to no more than "average monthly wage" in the Barragan opinion was derived by the supreme court from its prior opinions in Domutz v. Southern Bell Tel. & Tel. Co., 339 So.2d 636 (Fla. 1976), and Brown v. S.S. Kresge Co., 305 So.2d 191 (Fla. 1974). Both of those decisions were predicated on provisions in court-made rules governing workers' compensation proceedings that no longer appear in the current Workers' Compensation Rules of Procedure. Although workers' compensation law is wholly a creature of statute, unlike common law rights and remedies, there is no statutory provision in chapter 440 authorizing the limitation directed in the Barragan opinion. This matter was explored at length during oral argument, and the City agreed that the limitation would be applicable only to the combination of disability pension benefits and workers' compensation benefits, as that was the precise factual situation present in the Barragan case.

We have given effect to the "Barragan offset" in this case in the absence of statutory authority because this court is required to follow the decisions of our supreme court. However, this limitation is a matter that should be addressed by legislative enactment as soon as possible to avoid future controversies.
[1] Philip C. Owen, Chartered v. Department of Revenue, 597 So.2d 380 (Fla. 1st DCA 1992); Gardinier, Inc. v. Department of Pollution Control, 300 So.2d 75, 78 (Fla. 1st DCA 1974); Turner v. Department of Professional Regulation, 591 So.2d 1136, 1137 (Fla. 4th DCA 1992).
[2] 70 C.J.S. Penalties § 2 at 107 (1992).
[3] Id. at § 5 at 108-109 (1992).
[4] Barragan v. City of Miami, 545 So.2d 252 (Fla. 1989).
[5] Jewel Tea Company v. Florida Industrial Commission, 235 So.2d 289 (Fla. 1969).
[6] See City of Miami v. Arostegui, 606 So.2d 1192, (Fla. 1st DCA 1992), certifying the question of whether offset amount restored following Barragan constitutes an "installment of compensation" for purpose of imposing penalties.
[7] In State, Department of Transportation v. Davis, 416 So.2d 1132, 1133 (Fla. 1st DCA 1982), this court held that despite Chapter 440's providing for a social security offset [section 440.15(10), now subsection 440.15(9)], money payable under the social security laws is not "compensation."
[8] City of Miami v. Knight, 510 So.2d 1069 (Fla. 1st DCA), cert. denied, 518 So.2d 1276 (Fla. 1987); Hoffkins v. City of Miami, 339 So.2d 1145 (Fla. 3d DCA 1976), cert. denied, 348 So.2d 948 (Fla. 1977).
[9] Daytona Beach v. Amsel, 585 So.2d 1044 (Fla. 1st DCA 1991).
[10] § 440.20(7), Fla. Stat.:

(7) ... When any installment of compensation payable without an award has not been paid within 14 days after it became due and the claimant concludes the prosecution of the claim before a judge of compensation claims without having specifically claimed additional compensation in the nature of a penalty under this section, he will be deemed to have acknowledged that, owing to conditions over which the employer or carrier has no control, such installment could not be paid within the period prescribed for payment and to have waived his right to claim such penalty.
[11] Four Quarters Habitat, Inc. v. Miller, 405 So.2d 475 (Fla. 1st DCA 1981):

[T]he DC should not impose a penalty if the employer has a legitimate excuse for not controverting.
Compare King v. Lord Colony Enterprises, 400 So.2d 856, 857 (Fla. 1st DCA 1981), wherein employer offered no excuse for delay in determining correct compensation rate.
[12] Florida Community Health Center v. Ross, 590 So.2d 1037, 1039 (Fla. 1st DCA 1991):

In the case of penalties, section 440.20(7) awards penalties against the employer or carrier depending upon fault. Further, the order awarding such penalties should contain sufficient findings of fact and conclusions of law supporting their imposition. Jupiter Marine v. Spoelstra, 528 So.2d 1270 (Fla. 1st DCA 1988). [emphasis added]