# Supreme Court of Florida

---

No. SC20-48

---

**JOE ELTON NIXON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

August 26, 2021

PER CURIAM.

Joe Elton Nixon is a prisoner under sentence of death. He appeals a trial court order, entered after a hearing, denying Nixon's claims (1) that he is intellectually disabled and therefore ineligible for the death penalty and (2) entitled to relief under *Hurst v. Florida,* 577 U.S. 92 (2016), and *Hurst v. State,* 202 So. 3d 40 (Fla. 2016). We affirm the order.[1]

---

1. We have jurisdiction. *See* Art. V, § 3(b)(1), Fla. Const.

I.

A.

Nixon was convicted and sentenced to death in 1985 for the first-degree murder of Jeanne Bickner. We detailed the horrific facts of Nixon's crime in our decision affirming the conviction and sentence on direct appeal. *Nixon v. State*, 572 So. 2d 1336 (Fla. 1990), *cert. denied*, 502 U.S. 854 (1991). Later we affirmed the denial of Nixon's initial postconviction motion. *Nixon v. State*, 932 So. 2d 1009 (Fla. 2006). Later still, we affirmed the denial of Nixon's initial motion claiming that he is intellectually disabled. *Nixon v. State*, 2 So. 3d 137 (Fla. 2009).

Before us now is Nixon's successive motion under Florida Rule of Criminal Procedure 3.203 raising an intellectual disability claim. "[T]o establish intellectual disability as a bar to execution, a defendant must demonstrate (1) significantly subaverage general intellectual functioning; (2) concurrent deficits in adaptive behavior; and (3) manifestation of the condition before age eighteen." *Haliburton v. State*, 46 Fla. L. Weekly S177, S178 (Fla. June 17, 2021); s*ee also* § 921.137, Fla. Stat. (2019); Fla. R. Crim. P. 3.203. "[S]ignificantly subaverage intellectual functioning" means

"performance that is two or more standard deviations from the mean score on a standardized intelligence test." § 921.137(1), Fla. Stat; *see also* Fla. R. Crim. P. 3.203(b). Given that the mean IQ test score is 100 points and the standard deviation is approximately 15 points, this definition translates to an IQ test score of approximately 70 points. *Hall v. Florida*, 572 U.S. 701, 711 (2014).

Nixon filed his successive intellectual disability claim in 2015, after the Supreme Court's decision in *Hall*. *Hall* is a successor case to *Atkins v. Virginia*, 536 U.S. 304 (2002), where the Supreme Court first held that the U.S. Constitution forbids the execution of persons with intellectual disability. After *Atkins* but before *Hall*, we had held that "failure to present an IQ score of 70 or below precluded a finding of intellectual disability." *Haliburton*, 46 Fla. L. Weekly S178 (citing *Cherry v. State*, 959 So. 2d 702, 712-13 (Fla. 2007)).

We recently explained the holding in *Hall* as follows:

> In *Hall*, the Supreme Court held that Florida's "rigid rule" interpreting section 921.137(1) as establishing a strict IQ test score cutoff of 70 or less in order to present additional evidence of intellectual disability "creates an unacceptable risk that persons with intellectual disability will be executed, and thus is unconstitutional." 572 U.S. at 704, 134 S.Ct. 1986. The Court further held that when assessing the intellectual functioning prong of the intellectual disability standard, courts must take into

- 3 -

account the standard error of measurement (SEM) of IQ tests. *Id.* at 723. And "when a defendant's IQ test score falls within the test's acknowledged and inherent margin of error [±5], the defendant must be able to present additional evidence of intellectual disability, including testimony regarding adaptive deficits." *Id.*

*Haliburton*, 46 Fla. L. Weekly S178. We noted in *Haliburton* that, even after *Hall*, "[i]f the defendant fails to prove any one of the three components of the statutory test for intellectual disability, the defendant will not be found to be intellectually disabled." *Id.*

When it first took up Nixon's successive intellectual disability claim, the trial court summarily denied Nixon's motion. Nixon appealed the denial, and while that appeal was pending, this Court held that *Hall* is retroactive to cases where there has already been a finding that the defendant is not intellectually disabled. *See Walls v. State*, 213 So. 3d 340 (Fla. 2016). In Nixon's appeal, we concluded that summary denial of Nixon's successive motion was inconsistent with our cases interpreting *Hall* and we remanded the case to the trial court "to conduct proceedings to determine whether a new evidentiary hearing is necessary." *Nixon v. State*, No. SC15-2309, 2017 WL 462148, at *2 (Fla. Feb. 3, 2017).

The trial court held an evidentiary hearing on remand and received evidence on all three prongs of the intellectual disability test. Ultimately the court concluded that Nixon had presented clear and convincing evidence of adaptive deficits but that he had failed to establish the other two prongs—significantly subaverage intellectual functioning and manifestation by age 18.

In its order denying Nixon's intellectual disability claim, the trial court explained that the parties had presented a range of IQ test scores for Nixon at the hearing: 88, 80, 73, 72, 68, and 67. Of these, the court found that the test score of 80 was the most credible—a score that, accounting for the standard error of measurement, placed Nixon's IQ somewhere in a range from 75 to 85. Nixon received that score on a WAIS III test[2] administered in 2006 by the state's expert, Dr. Gregory Prichard, a forensic psychologist. Specifically, the court found that "Dr. Prichard's full-scale score of 80 and SEM range of 75-85 is more credible than the

_____

2. WAIS is an acronym for Wechsler Adult Intelligence Scale. Dr. Gregory Prichard testified that the WAIS-III test was the state of the art when he administered it to Nixon in 2006 and that the WAIS-IV test has now replaced it as the current state of the art. Dr. Barry Crown, one of Nixon's experts, administered the WAIS-IV to Nixon in 2017 and scored Nixon's IQ at 67.

scores falling within the *Hall* range [i.e., the scores that, accounting for the standard error of measurement, placed Nixon's IQ at or below 70]."

The trial court determined that Nixon's criticisms of Dr. Prichard's test administration were unpersuasive. The court elaborated:

> First, there is no persuasive evidence that either the administration or scoring by Dr. Prichard was invalid. Second, as Dr. Prichard testified, the purpose of cognitive testing is to determine capacity. While many factors other than [intellectual disability] can reduce capacity on a given day—inattention, lack of effort, lack of rapport with the examiner, lack of sleep—no similar factors can increase capacity.

As part of its rationale for finding that Nixon had not established intellectual disability, the trial court reasoned that "*Hall* does not suggest that an IQ range of 75 to 85 ... should be adjusted by applying deficits in adaptive behavior to then further reduce the estimate of intellectual functioning lower than the standard error of measurement."

B.

In this appeal, Nixon argues that the trial court misapplied *Hall* and that the evidence shows that Nixon is intellectually

disabled. The State counters Nixon's arguments on the merits. But it also argues at the threshold that Nixon is unentitled to relief because *Hall* is inapplicable in his case, given this Court's recent decision in *Phillips v. State*, 299 So. 3d 1013 (Fla. 2020). In *Phillips*, we held that "this Court in *Walls* clearly erred in concluding that *Hall* applies retroactively," and we receded from *Walls*. *Id.* at 1023-24.

We agree with the State that Nixon is not entitled to reconsideration of whether he is intellectually disabled. It is true that—when *Walls* was still good law—this Court instructed the trial court to determine whether an evidentiary hearing was necessary to evaluate Nixon's successive intellectual disability claim in light of *Hall*. But under *Phillips*, the controlling law in our Court *now* is that *Hall* does not apply retroactively. It would be inconsistent with that controlling law for us to entertain Nixon's successive, *Hall*-based challenge to the trial court's order here.

We have not overlooked the law of the case doctrine. That doctrine reflects "the long-established 'principle that the questions of law decided on appeal to a court of ultimate resort must govern the case in the same court and the trial court, through all

subsequent stages of the proceedings.'" *State v. Okafor*, 306 So. 3d 930, 934 (Fla. 2020) (quoting *Delta Prop. Mgmt. v. Profile Invs., Inc.*, 87 So. 3d 765, 770 (Fla. 2012)).  But the law of the case doctrine is prudential, and it has exceptions.  One "generally accepted occasion for disturbing settled decisions in a case [is] when there has been an intervening change in the law underlying the decision."  *Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 685 (7th Cir. 2014); *see also Wagner v. Baron*, 64 So. 2d 267, 268 (Fla. 1953) (law of the case doctrine "must give way where there has been a change in the fundamental controlling legal principles" (quoting *Imbrici v. Madison Ave. Realty Corp.*, 99 N.Y.S.2d 762, 765 (Sup. Ct. 1950)).  This exception to the law of the case doctrine applies here.

Accordingly, we affirm the denial of Nixon's successive intellectual disability claim.

## II.

Nixon also appeals the trial court's denial of Nixon's most recent successive motion under Florida Rule of Criminal Procedure 3.851.  In that motion, Nixon sought relief "predicated upon *Hurst*

*v. Florida*, 136 S. Ct. 616 (2006) and *Hurst v. State*, 202 So. 3d 40 (Fla. 2016)."[3]

We have repeatedly held that *Hurst* relief is unavailable to defendants, like Nixon, whose death sentences were final before the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002). *See, e.g.*, *Wright v. State*, 312 So. 3d 59, 60 (Fla. 2021). Accordingly, we affirm this aspect of the trial court's order as well.

### III.

We affirm the trial court's order denying Nixon's successive intellectual disability claim and his *Hurst*-based claim.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

In *Phillips v. State*, 299 So. 3d 1013 (Fla. 2020), I dissented to the majority's holding that *Hall v. Florida*, 572 U.S. 701 (2014), is

---

3. We partially receded from *Hurst v. State*, 202 So. 3d 40 (Fla. 2016) in *State v. Poole*, 297 So. 3d 487 (Fla. 2020).

- 9 -

not to be applied retroactively, and its resultant decision to recede from *Walls v. State*, 213 So. 3d 340 (Fla. 2016). *See Phillips*, 299 So. 3d at 1024-26 (Labarga, J., dissenting).

In addition to my fundamental disagreement with the holding in *Phillips*, I noted the following:

> [B]ecause this Court held *Hall* to be retroactive more than three years ago in *Walls*, some individuals have been granted relief pursuant to *Walls* and received consideration of their intellectual disability claims under the standard required by *Hall*. However, going forward, similarly situated individuals will not be entitled to such consideration. This disparate treatment is patently unfair.

*Id.* at 1026.

I adhere to my dissent in *Phillips*, and thus, I dissent to the majority's conclusion that Nixon is not entitled to consideration of his successive claim of intellectual disability.

An Appeal from the Circuit Court in and for Leon County,
    Jonathan Eric Sjostrom, Judge
    Case No. 371984CF002324AXXXXX

Eric M. Freedman of Law Offices of Eric M. Freedman, New York, New York; Maria DeLiberato and Marie-Louise Samuels Parmer of Parmer DeLiberato, P.A., Tampa, Florida; and Moe Keshavarzi, David Poell, and Laura Alexander of Sheppard, Mullin, Richter & Hampton LLP, Los Angeles, California,

    for Appellant

Ashley Moody, Attorney General, and Michael T. Kennett, Assistant Attorney General, Tallahassee, Florida,

for Appellee