# Supreme Court of Florida

---

No. SC20-1847

---

**WILLIAM LEE THOMPSON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

March 31, 2022

PER CURIAM.

William Lee Thompson—a prisoner under sentence of death—appeals the trial court's summary denial of his seventh motion for postconviction relief, filed under Florida Rule of Criminal Procedure 3.851.[1]  We affirm.

## I.    Background

In 1976, police arrested Thompson for his involvement in Sally Ivester's death.  We have described the facts surrounding her death as follows:

---

1.  We have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.

Thompson, Rocco Surace, Barbara Savage, and the victim Sally Ivester were staying in a motel room. The girls were instructed to contact their homes to obtain money. The victim received only $25 after telling the others that she thought she could get $200 or $300. Both men became furious. Surace ordered the victim into the bedroom, where he took off his chain belt and began hitting her in the face. Surace then forced her to undress, after which . . . Thompson began to strike her with the chain. Both men continued to beat and torture the victim. They rammed a chair leg into the victim's vagina, tearing the inner wall and causing internal bleeding. They repeated the process with a night stick. The victim was tortured with lit cigarettes and lighters, and was forced to eat her sanitary napkin and lick spilt beer off the floor. This was followed by further severe beatings with the chain, club, and chair leg. The beatings were interrupted only when the victim was taken to a phone booth, where she was instructed to call her mother and request additional funds. After the call, the men resumed battering the victim in the motel room. The victim died as a result of internal bleeding and multiple injuries.

*Thompson v. State*, 389 So. 2d 197, 198 (Fla. 1980).

The State charged Thompson with first-degree murder and other crimes. After undergoing several psychiatric evaluations,[2] Thompson pled guilty to each of the charged offenses. Following the penalty phase, the jury recommended a sentence of death, and

---

2. The results of each evaluation showed that Thompson was competent to proceed.

the trial court accepted that recommendation.  On direct appeal, we reversed Thompson's convictions and sentences and remanded his case to the trial court.  *Thompson v. State*, 351 So. 2d 701, 701 (Fla. 1977).

Upon remand, Thompson again pled guilty to each offense and received a death sentence for Ivester's murder.  We affirmed on direct appeal.  *Thompson*, 389 So. 2d at 198.  However, we later granted Thompson a new penalty phase because his "death sentence was imposed in violation of *Lockett* [*v. Ohio,* 438 U.S. 586 (1978)], and in violation of . . . *Hitchcock* [*v. Dugger*, 481 U.S. 393,393 (1987)]."  *Thompson v. Dugger*, 515 So. 2d 173, 175 (Fla. 1987).  On remand, the trial court again sentenced Thompson to death, and we affirmed.  *Thompson v. State*, 619 So. 2d 261, 264, 267 (Fla. 1993).  His death sentence became final in 1993.

Since then, Thompson has sought postconviction relief in both state and federal courts, claiming—among other things—that he has an intellectual disability and is thus ineligible for execution under *Atkins v. Virginia*, 536 U.S. 304 (2002).  We now detail some of the prior proceedings in state court and developments in relevant case law.

Thompson's first three postconviction motions were summarily denied. Each time, we reversed. In reversing the summary denial of the third postconviction motion, we ordered the trial court to conduct an evidentiary hearing based on the standard set forth in *Cherry v. State,* 959 So. 2d 702 (Fla. 2007).[3] *Thompson v. State*, 3 So. 3d 1237, 1238-39 (Fla. 2009). The trial court held the hearing as ordered and ultimately denied relief, finding that Thompson failed to establish the first prong of the *Cherry* test, *i.e.,* "an IQ of 70 or less." We affirmed that ruling on appeal. *Thompson v. State*, 41 So. 3d 219 (Fla. 2010) (table decision).

Seven years later, the United States Supreme Court rejected *Cherry*'s rigid IQ score cutoff, holding that it "create[d] an unacceptable risk that persons with intellectual disability will be executed" in violation of the Eighth Amendment to the United

---

3. *See Cherry*, 959 So. 2d at 711 (interpreting section 921.137(1), Florida Statutes (2002), as requiring a defendant seeking to establish an intellectual disability claim to prove that (1) "he has significantly subaverage general intellectual functioning," an IQ of 70 or less, (2) "significantly subaverage general intellectual functioning . . . with deficits in adaptive behavior," and (3) manifestation of subaverage intellectual functioning and deficits prior to age eighteen).

States Constitution. *Hall v. Florida*, 572 U.S. 701, 704 (2014). Thereafter, Thompson filed another motion for postconviction relief, arguing that *Hall* applied retroactively to his case. The trial court summarily denied the motion, and Thompson appealed. Relying on *Walls v. State*, 213 So. 3d 340, 346 (Fla. 2016), we held that *Hall* applied retroactively to Thompson's case. *Thompson v. State*, 208 So. 3d 49, 50 (Fla. 2016). Thus, we reversed the summary denial and remanded for an evidentiary hearing. *Id.*

Over the next five years, Thompson and the State litigated various issues related to the *Hall* hearing. While such litigation was ongoing, we receded from *Walls*. *See Phillips v. State*, 299 So. 3d 1013 (Fla. 2020) (finding that *Hall* did not apply retroactively and receding from *Wall*'s contrary holding). The State then filed a motion in the trial court arguing that *Phillips* constituted an intervening change in law, which eliminated the need for a new hearing. Agreeing with the State, the trial court denied Thompson's intellectual-disability claim without holding a hearing.[4]

_____

4. The trial court did not address Thompson's argument challenging this Court's holding in *Phillips*.

This appeal follows.

## II.    Analysis

Thompson argues that our decision in *State v. Okafor*, 306 So. 3d 930, 933 (Fla. 2020), required the trial court to conduct a *Hall* hearing pursuant to our mandate, regardless of the intervening change of law brought about by *Phillips*.  According to Thompson, the trial court's failure to conduct such a hearing constituted reversible error.[5]  Thompson reads *Okafor* too broadly.

In *Okafor*, we rejected the State's request to reinstate Okafor's death sentence three years after it was vacated pursuant to *Hurst v. State*, 202 So. 3d 40 (Fla. 2016).  *Okafor*, 306 So. 3d at 933-35; *see also Okafor v. State*, 225 So. 3d 768, 775 (Fla. 2017) (vacating Okafor's death sentence).  We stressed that our prior judgment vacating the death sentence wiped the slate clean as to that sentence, rendering it a nullity.  *Okafor*, 306 So. 3d at 933.  Thus, Okafor was a convicted capital defendant without a sentence.  We also emphasized that the time for altering our judgment had long

---

5. We review the trial court's summary denial of Thompson's postconviction motion de novo.  *Rogers v. State*, 327 So. 3d 784, 787 n.5 (Fla. 2021).

since passed. *Okafor*, 306 So. 3d at 933-34. Under these unique circumstances, "there [were] no available legal means" "to undo [the] final judgment vacating Okafor's death sentence." *Id.* at 934.

*Okafor*, however, is not controlling here because our judgment ordering a new *Hall* hearing did not vacate Thompson's death sentence. Accordingly, in contrast with Okafor's nullified death sentence, Thompson's death sentence remains fully intact—and has been so since becoming final in 1993. *See Hanks v. State*, 327 So. 3d 940, 943 (Fla. 1st DCA 2021) (distinguishing *Okafor* where the noncapital defendant's sentence remained intact).

Finding *Okafor* inapplicable to this case, we turn to the law of the case doctrine. That doctrine "requires that questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings." *Fla. Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001). However, we have recognized exceptions to the doctrine, including where there has been an intervening change of controlling law. *Wagner v. Baron*, 64 So. 2d 267, 268 (Fla. 1953) (noting that the law of the case doctrine "must give way where there has been a change in the fundamental controlling legal principles").

Such a change occurred when we decided in *Phillips* that *Hall* did not warrant retroactive application. Notably, in *Nixon v. State*, 327 So. 3d 780 (Fla. 2021), we declined to review the merits of a ruling denying a *Hall*-based intellectual disability challenge, reasoning:

> It is true that—when *Walls* was still good law—this Court instructed the trial court to determine whether an evidentiary hearing was necessary to evaluate Nixon's successive intellectual disability claim in light of *Hall*. But under *Phillips*, the controlling law in our Court now is that *Hall* does not apply retroactively. It would be inconsistent with that controlling law for us to entertain Nixon's successive, *Hall*-based challenge to the trial court's order here.

*Id.* at 783.

*Nixon*'s rationale applies here. Since Thompson's death sentence was final in 1993, *Phillips* precludes application of *Hall* in this case. Thus, Thompson could not succeed on his *Hall*-based intellectual disability claim. As a consequence, the trial court did not err in summarily denying that claim.[6]

---

6. To the extent Thompson asks us to revisit our holding in *Phillips*, we decline to do so. *See, e.g.*, *Nixon*, 327 So. 3d at 783; *Freeman v. State*, 300 So. 3d 591, 594 (Fla. 2020); *Cave v. State*, 299 So. 3d 352, 353 (Fla. 2020).

### III. Conclusion

Based on our analysis above, we affirm the trial court's order summarily denying Thompson's seventh motion for postconviction relief.

It is so ordered.

CANADY, C.J., and POLSTON, LAWSON, MUÑIZ, COURIEL, and GROSSHANS, JJ., concur.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

In light of my dissent in *Phillips v. State*, 299 So. 3d 1013 (Fla. 2020) (receding from *Walls v. State*, 213 So. 3d 340 (Fla. 2016), and holding that *Hall v. Florida*, 572 U.S. 701 (2014), does not apply retroactively), I dissent to the majority's decision affirming the summary denial of Thompson's seventh motion for postconviction relief.

An Appeal from the Circuit Court in and for Miami-Dade County,
    Marisa Tinkler-Mendez, Judge
    Case No. 131976CF003350B000XX

Neal Dupree, Capital Collateral Regional Counsel, Brittney Nicole Lacy, Staff Attorney, South Region, Fort Lauderdale, Florida, and Marie-Louise Samuels Parmer, Special Assistant Capital Collateral Regional Counsel, Tampa, Florida,

for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Jennifer A. Davis, Assistant Attorney General, Miami, Florida,

for Appellee